### UNITED STATES v. HAWLEY & LETZERICH.

(Circuit Court, S. D. Texas. February 4, 1908.)

#### No. 2,040 (1,981).

1. CUSTOMS DUTIES—"SEA STORES"—COAL.

Under Navigation Act March 3, 1897, c. 389, § 17, 29 Stat. 691 (U. S. Comp. St. 1901, p. 1871), permitting "sea stores" to be transferred from one vessel to another of the same line without payment of duties, coal is not "sea stores."

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, p. 6361.]

2. SAME—WORDS AND PHRASES—"SEA STORES."

"Sea stores" are the supplies of different articles provided for the subsistence and accommodation of the ship's crew and passengers, and do not include coal.

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below is reported as G. A. 6,643 (T. D. 28,321). The majority and dissenting opinions filed by the board are as follows:

"HAY, General Appraiser. Certain coal was transferred from the steamship Anselma de Larrinaga to the steamship Mercedes de Larrinaga, belonging to the Larrinaga Line, while the vessels were lying alongside of each other in the port of Galveston. This coal was assessed for duty by the collector under the first clause of Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 415, 30 Stat. 190 (U. S. Comp. St. 1901, p. 1674), and a duty of 67 cents per ton levied thereon. Two protests are filed against this action. Protest 232,274 claims that 70 per cent. was slack and should be assessed at 15 cents per ton under one of the provisions of paragraph 415. Protest 232,275 claims that said coal should not have been assessed for duty; and, while the protest is a little awkwardly drawn, we think it fair to assume that the reason therein intended to be given is that said coal is exempt from duty as sea stores under the provisions of Act March 3, 1897, c. 389, 29 Stat. 691 (U. S. Comp. St. 1901, p. 1871). The papers submitted with the protests show that the steamships in question were of the same line; that the coal was transferred from one vessel to another, said transfer being effected by means of buckets, under the supervision of the customs officers, and that it was made without the coal touching the wharf.

"Section 415, 30 Stat. 190 (U. S. Comp. St. 1901, p. 1674), reads as follows: 'Coal, bituminous, and all coals containing less than ninety-two per centum of fixed carbon, and shale, sixty-seven cents per ton of twenty-eight bushels, eighty pounds to the bushel; coal slack or culm, such as will pass through a half-inch screen, fifteen cents per ton of twenty-eight bushels, eighty pounds to the bushel: Provided, that on all coal imported into the United States, which is afterwards used for fuel on board vessels propelled by steam and engaged in trade with foreign countries, or in trade between the Atlantic and Pacific ports of the United States, and which are registered under the laws of the United States, a drawback shall be allowed equal to

the duty imposed by law upon such coal, and shall be paid under such regulations as the Secretary of the Treasury shall prescribe; coke, twenty per centum ad valorem.'

"Section 17 of the act of March 3, 1897, c. 389, 29 Stat. 691 (U. S. Comp. St. 1901, p. 1871), reads as follows: 'That section twenty-seven hundred and ninety-seven of the Revised Statutes be, and is hereby, amended by adding thereto the following words: "Sea stores and the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States delayed in port for any cause may be transferred in such port of the United States under the supervision of the customs officers from one vessel to another of the same owner, without payment of duties, but duties must be paid on such stores or equipments landed for consumption, except American products." '

"An attempt has evidently been made to bring the transfer of the coal in question within the purview of this statute; and, from the papers, that attempt has been successful, providing coal consumed upon the voyage, as this undoubtedly was intended to be, is classed as 'sea stores.' There is a clear distinction made by the law between ship stores and sea stores. The former are such articles as become a part of the equipment of the ship, including furniture, cables, tackle, etc.; the latter are such commodities as are consumed by the passengers or crew. In other words, ship stores become a permanent part of the equipment of the vessel; sea stores are to be consumed during the voyage.

"Section 2795 of the Revised Statutes (U. S. Comp. St. 1901, p. 1871) requires the master of a vessel to particularly specify in his report or manifest the articles that are to be used as sea stores on such vessel. To this he is to take an oath that the articles specified to be used as sea stores are not intended by way of merchandise or for sale, and these articles are thereupon made free of duty. This report must be delivered to the collector; and he, with the naval officer, where there is one, or alone, where there is no naval officer, under the provisions of section 2796 of the Revised Statutes (U. S. Comp. St. 1901, p. 1871), must determine if any part of the goods reported as sea stores is excessive, and estimate the amount of duty upon such excess. This section has no application to the case at bar, for no such finding was made by the collector.

"Section 2798 of the Revised Statutes (U. S. Comp. St. 1901, p. 1872) provides that the master of any vessel propelled by steam arriving in any port of the United States may retain all the coal such vessel may have on board at the time of her arrival, and may proceed with such coal to a foreign port without being required to land the same in the United States or to pay any duty thereon. This we do not think operates to take coal from out the category of 'sea stores' or to distinguish it in any way from other sea stores except to relieve it from the operation of section 2796—that is, there can be no excessive coal under such circumstances, as section 2798 provides that all the coal may be retained whether it is more or less than is necessary for the voyage.

"It is difficult to escape the conclusion that coal is 'sea stores' within the meaning of that phrase as used in the amendment to section 2797, Revised Statutes, cited above. The word 'consumed' is not to be so narrowly construed as to mean only such articles as are eaten. The candles or kerosene used to light the vessel are as much consumed by the passengers and crew in the course of a voyage as is the food they eat. If the candles and kerosene used in lighting the vessel are sea stores, then why not the coal on more modern vessels used to produce the power generating the electricity for lighting; and if so, why not the coal consumed in furnishing the power to propel the vessel? The Assistant Secretary of the Treasury, in a letter to the Commissioner of Navigation (T. D. 12,172), evidently takes this view, for he advises that coal retained in the bunkers of an American steam vessel is to be considered as sea stores. Ship stores and sea stores we think contemplate every article taken aboard ship to be used in connection with its navigation and voyage, and the distinction between the two is as above stated. In the Cunard Steamship Company's Case, G. A. 4,464 (T. D. 21,324), the coal which was held not to be 'sea stores' was used as ballast, and this

we think is clearly distinguishable from the coal intended to be consumed during the voyage, as in the case at bar.

"From the view here expressed it is not necessary to consider protest 232,274, as the coal under the circumstances stated herein we think is free of duty as 'sea stores' under section 17 of the act of March 3, 1897.

"Protest 232,275 is therefore sustained, and the collector directed to reliquidate the entry accordingly. Protest 232,274 is overruled.

"SOMERVILLE, General Appraiser. I dissent from the conclusion reached in these cases by my colleagues, and from the reasoning on which the decision. is based. It appears from the facts in the case that certain coal imported at the port of Galveston was assessed with duty by the collector. * * * After arrival at Galveston the coal was transferred from the vessel in which it was contained to another vessel of the same line, lying alongside in the port of Galveston. The opinion construes the protest to claim that the merchandise is free of duty as sea stores. * * * It is held accordingly by my colleagues that this coal is sea stores, and is free of duty as such under the section last quoted. The error of the opinion consists in the fact that it fails to make any distinction between 'sea stores' and 'coal stores,' and that the transfer of the coal after arrival in the harbor of Galveston from one vessel to another of the same line was not an unlading of the coal, which is expressly prohibited by the terms of the present tariff act. This conclusion and the reasoning on which it is based are directly repugnant to and subversive of the decision made by this board on June 23, 1899, in the case of the Cunard Steamship Company, G. A. 4,464 (T. D. 21,324), and also of the decision of the district court of Michigan there cited, in the Fame Case, 1 Brown's Adm., 42, 8 Fed. Cas. 982 (No. 4,633). In the board decision last cited it was expressly decided that the tariff act of 1897, coupled with previous legislation, makes a clear distinction between 'sea stores,' by which is meant stores designed for the use and consumption of the crew and passengers of a vessel on the voyage, and 'coal stores' and other coal contained on board a vessel propelled by steam. It was further decided in this case that the transfer of coal stores from one vessel to another of the same line after arrival in this country at the port of entry was an unlading of this coal within the meaning of paragraph 523 of the present Tariff Act 1897, § 2, Free List, 30 Stat. 197 (U. S. Comp. St. 1901, p. 1682), which is prohibited by said paragraph. It was observed by the board in this decision, as follows: 'The various statutes enacted by Congress on this subject seem to make a distinction between what is commonly known as "sea stores" and "coal stores" and "other coal" contained on board vessels propelled by steam. Section 2795 of the Revised Statutes (U. S. Comp. St. 1901, p. 1871) provides for the exemption from duty of the sea stores of a vessel, and requires that the master shall particularly specify the articles, in the report or manifest to be made by him, designating them as sea stores of such vessel, and that they are truly such and not intended as merchandise or for sale.' It may be conceded for the sake of argument that coal stores used on vessels of this character might come within the purview of sea stores but for the fact that Congress has seen fit to designate such stores in our statutes and tariff acts as 'coal stores,' and has enacted a series of legislation placing them entirely in a separate and distinct category.

"The following statutes are cited on this subject for illustration:

"Tariff Act of July 24, 1897, c. 11, § 2, Free List, par. 523, 30 Stat. 197 (U. S. Comp. St. 1901, p. 1682). 'Coal, anthracite, not specially provided for in this act, and coal stores of American vessels, but none shall be unloaded.' Similar legislation occurs in Tariff Act August 27, 1894, c. 348, § 2, Free List, par. 441, 28 Stat. 539; also in Tariff Act October 1, 1890, c. 1244, § 2, Free List, pars. 536, 537, 26 Stat. 605; and Tariff Act March 3, 1883, c. 121, Free List, pars. 673, 674, 22 Stat. 518.

"Section 2798, Rev. St. (U. S. Comp. St. 1901, p. 1872), reads as follows: 'Sec. 2798. The master of any vessel propelled by steam arriving at any port in the United States may retain all the coal such vessel may have on board at the time of her arrival, and may proceed with such coal to a foreign port, without being required to land the same in the United States or

to pay any duty thereon.' So, the proviso to said paragraph 415 of the present tariff act, which makes coal dutiable by the ton, expressly provides that, 'On all coal imported into the United States which is afterwards used for fuel on board vessels propelled by steam and engaged in trade with foreign countries or in trade between the Atlantic and the Pacific coasts of the United States, and which are registered under the laws of the United States, a drawback shall be allowed equal to the duty imposed by law on such coal, and shall be paid under such regulations as the Secretary of the Treasury shall prescribe.'

"This same distinction for which I contend between coal stores and sea stores was made in board decision in Re Pacific Coast Co., G. A. 5,435 (T. D. 24,705), relating to a cargo of an American steamer, consisting of coal, which was the property of the owners of the vessel, who, before arrival of the vessel at port, set aside a portion of the coal as coal stores of the steamer; and such coal as was not unloaded was held to be free as 'coal stores' of an American vessel, under paragraph 523 of the tariff act of 1897, notwithstanding the fact that the importers made an entry of the entire lot of coal at the customhouse. So, in the case of McDormand, G. A. 5,355 (T. D. 24,497), certain coal was imported on a steamship and entered at the customhouse at Boston, Mass., and a portion of it was purchased by the owners of the vessel and retained in the vessel's bunkers as a part of her coal stores for the return voyage but was never unloaded. It was held that the importation was complete when the goods were brought within the limits of the port with the intention of unloading them, and that the right of the government to duties then attached, and, further, that it was not essential to that right that the goods should actually be unloaded. In support of this conclusion the board cited the following decisions: Meredith v. United States, 13 Pet. 486, 494, 10 L. Ed. 258; U. S. v. Vowell, 5 Cranch, 368, 3 L. Ed. 128; Arnold v. U. S., 9 Cranch, 104, 3 L. Ed. 671; and Harrison v. Vose, 9 How. 372, 381, 13 L. Ed. 179. These authorities fully supported the proposition in question. It was there held by the board that the coal under consideration was not free of duty under said paragraph 523 of the present tariff act, nor was the article free under section 2798 of the Revised Statutes, before cited.

"In the case of the steamer Fame, decided as far back as 1858, cited supra, it was held that the transfer of a cargo from a vessel while at wharf in port is an unlading and delivery within the meaning of section 50 of the act of March 2, 1799, c. 22, 1 Stat. 665. It was observed there by the court as follows: 'It is true that the cargo was not landed in the literal sense of the word—that is, placed on shore—but it was taken from one vessel to another while both were in port. This was clearly a landing within the intent of the statute, which was designed to prevent frauds upon the revenue.' It is immaterial in my opinion, and was so decided by the board in the case of the Cunard Steamship Company, cited supra, that this transfer is made to a vessel of the same line instead of a different line, the purpose of the statute being to prevent frauds on the revenue. It is manifest that such frauds would be just as liable to occur in the case of transfers made to a vessel of the same line as to another vessel.

"I have called attention before to the line of legislation, both in the Revised Statutes and in our tariff laws, making a clear distinction between 'coal stores' or such coal as is consumed by the steamship companies, and 'sea stores'; and it harmonizes with every canon of sound statutory construction that this distinction should be observed by judicial tribunals in construing such statutes. An illustration of this kind is found in the decision of the Supreme Court of the United States in Seeberger v. Cahn, 137 U. S. 95, 11 Sup. Ct. 28, 34 L. Ed. 599, where two provisions of the tariff act of March 3, 1883, c. 121, pars. 362, 363, Schedule K, 22 Stat. 508, on woolens and worsteds, were construed by the court. It was there held that while worsted may in some respects be construed as a manufacture of wool, nevertheless it was differentiated as a separate article for tariff purposes, inasmuch as it was specially enumerated under said tariff act of 1883. Mr. Justice Gray, speaking for the court, used the following language in that case: 'Though a worsted is doubtless a product of wool, and might in some respects be considered a manufacture of wool, yet manufactures of worsted, being subjected by the second

160 F.—47

paragraph to different duties than those imposed by the first paragraph on manufactures of wool, it necessarily follows that the manufacture of worsted cannot be considered as a manufacture of wool within the meaning of this statute.' So, in the case of Blumenthal v. U. S. (C. C.) 135 Fed. 254; Id.; 75 C. C. A. 322, 144 Fed. 384, affirming board decision G. A. 5,640 (T. D. 25,194), it was held that while paste may be considered a kind of glass, yet for tariff purposes it must be considered a separate substance under its own peculiar name, 'paste,' described in the tariff act.

"Following the decisions above cited, from which no appeal was ever taken, I am of opinion that the coal in question is 'coal stores,' and not 'sea stores,' within the meaning of tariff legislation, and that the same is not exempt from duty, on the ground that the transfer of the coal from one vessel to another was an unloading within the meaning of paragraph 523 of the present tariff act. The protests should accordingly be overruled.

Harris & Harris, for importers.

Lock. McDaniel, U. S. Atty.

BURNS, District Judge. This suit is upon a petition to review the decision of the Board of Appraisers sustaining the protest filed by Hawley & Letzerich, growing out of a transfer of coal from the Anselma to the Mercedes, said vessels being steamships of the Larrinaga Line, while the vessels were lying alongside of each other in the port of Galveston. The collector of customs assessed a duty of 67 cents per ton upon the coal so transferred, to which action the respondents excepted, and in their original protest contend that 47 per cent. of said coal is what is commonly known as "slack" or "culm," and under the second clause of paragraph 415 of the tariff act (Act July 24, 1897, c. 11, § 1, Schedule N, 30 Stat. 190 [U. S. Comp. St. 1901, p. 1674]), subject to a duty of 15 cents per ton.

A second protest was filed with the collector claiming the coal so transferred as aforesaid was free of duty in that it was a part of "the legitimate equipment" under section 17 of the act "to amend the laws relating to navigation," approved March 3, 1897 (29 Stat. 687, 691, c. 389 [U. S. Comp. St. 1901, p. 1871]). See section 2797, Rev. St. (U. S. Comp. St. 1901, p. 1871), as amended. That portion of said section relied upon is as follows:

"Sea-stores and the legitimate equipment of vessels belonging to regular lines plying between foreign ports and the United States delayed in port for any cause may be transferred  *  *  *  from one vessel to another vessel of the same owner without payment of duties, but duties must be paid on such stores or equipments landed for consumption, except American products."

The first contention was overruled by the General Appraisers, and the same has been waived and is not here insisted upon, for the very substantial reason that respondents are relieved from the payment of all duties by the decision of the board. It may be observed that the second protest, based upon the theory or contention that the coal is exempt from duty upon the ground that it is within the designation of "the legitimate equipment of the vessel so delayed," is not sustained by the board; but the holding is there made that the respondents intended by their protest to urge that the coal in question was a part of the "sea stores" of the vessel, and the board finds by a majority opinion that this last contention is sound, and thereupon dismisses the first protest, affirms the second, holding the coal so transferred not subject

to duty, with directions to the collector of customs to reliquidate the entry in accordance with said finding, to which action of the board one of the members thereof dissents, and files his opinion as a part of the record brought here for review.

The sole question for review as disclosed by the pleadings and relied upon in the argument is whether or not "coal" is a part of the sea stores of the vessel. "Sea stores" are defined in Commercial Navigation as "the supplies of different articles provided for the subsistence and accommodation of the ship's crew and passengers."

It follows, therefore, that coal being no part of the vessel's sea stores the petition for review should be sustained, the decision of the board reversed, and the action of the collector of customs in all things affirmed.