GROSS INCOME TAX DEPARTMENT OF TREASURY ET AL. *v.* HARBISON-WALKER REFRACTORIES COMPANY.

[No. 17,063. Filed May 24, 1943. Rehearing denied June 22, 1943. Transfer denied September 21, 1943.]

James A. Emmert and George N. Beamer, Attorneys General, David I. Day, Jr., Byron B. Emswiller and Joseph P. McNamara, Deputies Attorney General, for appellants.

*Baker, Daniels, Wallace & Seagle,* of Indianapolis (*Warrack Wallace* and *Paul N. Rowe,* both of Indianapolis, of counsel), for appellee.

DOWELL, J.—Appellee is a Pennsylvania corporation which operates plants outside the State of Indiana and one plant at East Chicago, Indiana. The Indiana plant is engaged in the manufacture of silica refractory material which is sold to steel manufacturers who use the material for lining open hearth furnaces devoted to the refining of steel where the material is exposed to terrific heat which reduces the metal to a molten condition and to the action of corrosive dust, slag and fumes. These physical and chemical reactions are such that the use of some of the material is frequently limited to a period of less than two weeks after which that portion of same which remains is useless for all purposes. In many instances, however, the life of the material is substantially longer, the testimony varying in that regard between a four months and a six and one-half months period. From the testimony it is also apparent that the useful life of the material varies with its thickness, i. e., a 24-inch thickness is much longer lived than a 12-inch thickness, etc. For convenience in application the material is supplied in the form of bricks which are cemented together with a binder composed of the same material. The only use to which the material is devoted is that herein described.

The Gross Income Tax Division taxed the gross receipts derived from the sale of this material at the rate of one per cent for the years 1938 and 1939 which tax the appellee paid under protest.

The cause was tried to the court below on the complaint and answer, the stipulations of the parties and the depositions of two expert witnesses, the trial resulting in a judgment for appellee, that it was entitled

to recover, on account of taxes and interest previously paid by it, the sum of $4,314.82 with interest thereon at the rate of 3% per annum from the dates of payment thereof until paid and costs.

The sole error assigned is the overruling of appellant's motion for a new trial which questions the sufficiency of the evidence and asserts that the decision of the court below is contrary to law.

The question here presented is whether gross receipts from the sale of this material shall be taxed at the rate of one-fourth of one per cent or at the rate of one per cent.

The answer turns upon the construction of the Gross Income Tax Act of 1933 as amended by the Acts of 1937, § 3 (a) that portion of same pertinent to the issue here being:

"(a) With respect to that part of the gross income of every person which is received from wholesale sales; except as hereinafter provided in subsection (d) of this section, the tax shall be equal to one-fourth of one per cent of such part of the gross income. The term 'wholesale sales' means and includes only the following: . . . (2) Sales of any tangible personal property as a material which is to be directly consumed in direct production by the purchaser in the business of producing tangible personal property by manufacturing, processing, refining, repairing, mining, agriculture, or horticulture: . . . Provided, further, That price or quantity shall not be considered in the application of this definition: . . . Provided, further, That the term 'consumed' as used herein shall refer only to the immediate dissipation or expenditure by combustion, use, or application, and shall not mean or include, the obsolescence discarding, disuse, depreciation, damage, wear or breakage, of tools, dies, equipment, rolling stock or its accessories, machinery or furnishings."

Appellant contends that the refractory material hereinbefore described is not consumed within the meaning of the statute so as to fall within that classification of materials the sale of which is taxable at the lower rate and further asserts that the material constitutes "equipment" within the meaning of the fifth proviso of said section 3 (a) (the second proviso in the section as quoted above) and that its destruction is by obsolescence, depreciation, or wearing out and not by consumption.

It is to be noted that the statute defines "consumed" as the immediate *dissipation* or *expenditure* by combustion, *use* or *application*. (Italics ours.)

> Since the statute provides its own definition of the term we cannot here attempt another but must ■ confine ourselves to a construction of the one given as it concerns this instant case.

The appellant does not contend that the material herein described is not directly used in direct production by the steel manufacturer, but, as above stated, asserts that it is not "consumed."

That there is here involved a dissipation or expenditure by use is a certainty beyond the realm of conjecture. The term "immediate," however, is one admitting of a wide variety of definitions. It is the indicium of a time interval as well as that of an interval of space. It can indicate relativity or continuity. It is the opposite of ultimate. It is qualitative, not quantitative, relative, not absolute. In its strictest sense as a time referent it means the present instant, instantaneously, without appreciable lapse of time; but to give the term this literal interpretation would strip the section here in controversy of all practical sense and applicability. That the Gross Income Tax Division

itself does not adopt such a theory is indicated by its own regulations wherein, among other things, coal and lubricating oils were classified, in effect, as materials "immediately dissipated or expended by combustion, use or application." There is an appreciable lapse of time involved in the consumption of these materials.

If, as appellant urges, the term "immediate" as used in the statute is a time referent then his argument falls under the weight of authority in this and other states for it has been held generally that the construction of the term when it occurs in contracts or in statutes is, that the act referred to shall be accomplished within such convenient time as is reasonably requisite. *Pacific Mut. Life Ins. Co.* v. *Branham* (1904), 34 Ind. App. 243, 70 N. E. 174; *The Insurance Company of North America* v. *Brim* (1887), 111 Ind. 281, 12 N. E. 315; *Martin et al.* v. *Pifer* (1884), 96 Ind. 245; *Fidelity & Deposit Co.* v. *Courtney* (1900), 103 F. 599, 43 C. C. A. 331.

Certainly the process of dissipation or expenditure involved here is accomplished within such time as is reasonably requisite to accomplish the object. This process begins with the first application of heat in the furnaces and is continuous and unabated until the refractory material is rendered as useless as the ash from burned coal. This is especially true in the instant case where the evidence shows that the furnaces are being pushed to capacity under the necessities of the times.

However, the term may also be considered as applying to causation as well as duration of time. Viewed in this light the term should, as we believe, be understood not in reference to the time which the act occupies, or the space through which it passes, or the place from which it is begun, or the intention with which it is done,

or the instrument or agent employed, but in reference to the progress and termination of the act, to its being done on the one hand, and its having been done on the other. If, in the instant case the dissipation of the refractory material is accomplished by the act of manufacture, at any moment of its progress, from the commencement to the termination thereof, then the dissipation is direct or immediate; if it arises after the act has been completed, though occasioned by the act, then it is consequential or collateral, or, more exactly, a collateral consequence.

Here the process of dissipation is set in motion by the first step in the manufacturing process, i. e., the first application of heat. The evidence shows that after this first heat the material is rendered useless for all other purposes. It cannot be removed, nor can it be re-sold. From thence forward its dissipation continues until it is useless for all purposes. The whole process of manufacture is one continuous, entire, immediate act, embracing in its progress the destruction of the refractory material. Its dissipation or expenditure is, therefore, immediate within the definition indicating causatior

Some addtional light is cast on the present controversy by the decision of the Supreme Court of the State of Michigan in the case of *Hertzler* v. *Manshum* (1924), 228 Mich. 416, 200 N. W. 155, wherein it was stated that the term "for immediate consumption" was intended to and did signify that the consumable goods in question had reached that consumer where it was withdrawn from the marts of trade.

We are constrained to the opinion that the refractory material here involved is properly classified as that consumed by "immediate dissipation or expenditure by combustion use or application."

See: *Old People's Home Society* v. *Wilson* (1898), 176 Ill. 94, 52 N. E. 41; *Robbinston* v. *Lisbon* (1855), 40 Me. 287; *Thompson* v. *Gibson* (1841), 8 Mees & Wels. 281; *Konrad* v. *Casualty & Surety Co.* (1897), 49 La. 636; *Lyon* v. *The Railway Passenger Assurance Co.* (1877), 46 Iowa 631; *Fidelity & Deposit Co.* v. *Courtney* (1902), 22 S. Ct. 833, 186 U. S. 342, 46 L. Ed. 1193; *Sawyer* v. *Perry* (1895), 88 Me. 42, 33 A. 660; *Foreman* v. *Louis Jacques Const. Co.* (1932), 257 N. Y. S. 45, 235 App. Div. 494; *United States* v. *Hawley & Letzerich* (1908), 160 F. 734; *Albuquerque Lumber Co.* v. *Bureau of Revenue of New Mexico* (1938), 42 N. M. 58, 75 P. (2d) 334.

The sole question remaining is whether the exception set out in the fifth proviso of said section 3 (a) should apply here, i. e., "shall not mean or include, the obsolescence, discarding, disuse, depreciation, damage, wear or breakage of tools, dies, equipment, rolling stock or its accessories, machinery or furnishings." The assumption that the exception is here applicable can rest only upon the premise that the material is "equipment." Obviously, it is not tools nor dies nor rolling stock or its accessories, nor machinery or furnishings. We are compelled to admit, however, that it may possibly be classified as equipment and that its disintegration, if we may so term it, may be attributed to "damage" or "wear."

However, for the purposes of taxation it must fall into one or the other classification; it cannot occupy both. We have concluded that it is material gross receipts from the sale of which are taxable at the rate of one-fourth of one per cent. If such gross receipts also can be taxable at a higher rate under another classification then the doubt must be resolved by giving the statute that construction most favorable to the tax-

payer. *Department of Treasury of Indiana* v. *Muessel et al.* (1940), 218 Ind. 250, 32 N. E. (2d) 596.

Judgment affirmed.

NOTE.—Reported in 48 N. E. (2d) 834.