No. 47,453

R. L. Polk and Company, *Appellee,* v. Harold A. Armold, Director of Taxation, Department of Revenue, State of Kansas, *Appellant.*

(527 P. 2d 973)

Opinion filed November 2, 1974.

*Robert L. Deam,* of Topeka, argued the cause, and *William L. Harris, Jr.,* of Topeka, was with him on the brief for the appellant.

*John F. Hayes,* of Gilliland, Hayes, Goering and Mills, of Hutchinson, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is an action for refund of sales taxes paid under the Kansas retailer's sales tax act (K. S. A. 79-3601, *et seq.*). The trial court entered summary judgment granting the refund and the director of taxation has appealed.

Appellee R. L. Polk and Company, a corporation, operates a printing plant in Hutchinson, Kansas, where its sole business is to print city directories for retail sale to chambers of commerce and cities throughout the United States. In the printing process it uses film, lithoplates, developer and other supplies which are the subject matter of this suit.

In 1970 the Kansas legislature amended our retailers' sales tax act by providing in general terms an exemption for consumable items of tangible personal property used in the manufacturing process (Laws, 1970, Chap. 389). Appellee paid sales tax upon the items in question from July 1, 1970, to December 31, 1971. Early in 1972 appellee concluded it had made these payments erroneously and made application for refund, which was denied by the director of revenue, predecessor in office of the director of taxation.

Appellee then instituted action in the district court seeking refund. Issues were joined and pretrial conference was held at which

the parties agreed the deposition of appellee's plant manager correctly reflected use of the items in question and that the director of taxation would submit an itemization of that property with the amounts of taxes already paid. Upon this state of the case each side moved for summary judgment. The trial court found that the property in question was immediately dissipated and consumed in appellee's printing process as a matter of law, making it exempt from taxation, and the court ordered refund of the total amount revealed by the director's itemization.

As indicated, the facts before the trial court were not in dispute; however, the record here is not at all clear as to the use of certain minor items nor as to the agreement of the parties respecting the tax liability of these items. The plant manager's deposition as narrated in the record reveals the following: The film in question is a type used for photographing lithographic material in order to make a lithoplate; the film is used from four hours to two days; it is accumulated by appellee for a period of time, then sent out to have the silver processed from it, which is sold. The lithoplate is composed of aluminum. It is processed by the use of two chemicals, a desensitizer which takes the emulsion off and a lacquer which brings out the image. A gum is used on the lithoplate to keep it from oxidizing. These materials as well as a certain type of tape become part of the lithoplate. The lithoplate is transferred to a rubber blanket, inked and used to transfer an image to paper for use in the directories. After use the lithoplates are sold for junk. From three to five or six days are required after the film is applied to the lithoplate before the process of applying the image to the printing blanket is completed. Developer is used for both film and plates. It is kept in a ten gallon film developing tank approximately two days. It weakens as the film goes through and is replenished by taking two gallons out of the tank and adding two gallons of developer, which procedure could occur every two or three days or two or three times in a day, depending on the amount of film used. Developer removed from the tank is destroyed. Three kinds of tape and other supplies are also used in the printing process (included here are some of the obscure items already mentioned).

The three principal kinds of property indicated in the director's itemization, and concerning which the record is clear, are the film, lithoplates and developer, along with the desensitizer, lacquer, gum and tape which become a part of the lithoplates.

Our sales tax law was enacted in 1937. For the privilege of engaging in the business of selling tangible personal property at retail a tax is imposed (K. S. A. 1970 Supp. 79-3603, since amended). There are, however, certain exemptions, reasons for which are stated generally in 68 Am. Jur. 2d, Sales and Use Taxes, § 112, thus:

"In order to prevent the pyramiding of taxes on the same commodity when it is sold in a different form after it is processed or when it is used in the manufacture of a more or less different character of commodity, the sales tax statutes usually contain a provision which in terms or in effect exempts the sale of such commodity from the sales tax in anticipation that the finished product processed or manufactured from such commodity will, when ultimately sold, share its burden of the tax." (p. 159.)

The specific proviso involved here is K. S. A. 1970 Supp. 79-3606 (m), which exempted the following:

"All sales of tangible personal property or services which are consumed in the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property. . . ."

(By amendment in 1971 the term "or services" was deleted from the foregoing, and the exemption currently appears as K. S. A. 1973 Supp. 79-3606 [n].)

A definitional section was included in the act. K. S. A. 1970 Supp. 79-3602 (m) provided:

" 'Property and services which are consumed' means tangible personal property or services which are essential or necessary to and which are actually used in and immediately consumed or dissipated in (1) the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property. . . ."

(In 1971 this section was also changed by deleting "services" from its inclusion and it now appears as K. S. A. 1973 Supp. 79-3602 [m].)

The crux of this appeal is whether the materials in question come within the purview of the exemption statutes.

Appellant first points out taxation is the rule—exemption the exception and exemption provisions are to be construed strictly against the claimant for exemption (*Assembly of God v. Sangster,* 178 Kan. 678, 290 P. 2d 1057) and that the rule that one who claims a statutory exemption from a tax must bring himself clearly within the statute, is applicable to the sales tax act (*Warren v. Fink,* 146 Kan. 716, 72 P. 2d 968). Appellant concedes in his brief the items in question are essential and necessary to appellee's operation but he contends they are not "used in the actual process of and immediately consumed or dissipated in . . . production, manufacture [or] processing . . . of tangible personal property." Appellant makes essentially three arguments: The film, lithoplates and

certain other items are not used in the actual manufacturing process but are used in preparatory processes preliminary to it; the lithoplates and attachments are in the nature of machinery, which is not exempt, and the items are not *immediately* consumed or dissipated.

The questions at issue are of first impression in this state. Cases in other jurisdictions are of limited aid because of differing wording in the exemption statutes and differing types of property asserted to be exempt. Our statutes do not define the term "manufacture" nor has our case law done so. Webster's Third New International Dictionary supplies this broad definition: ". . . the process or operation of making wares or other material products by hand or by machinery esp. when carried on systematically with division of labor . . . a productive industry using mechanical power and machinery. . . ."

In 68 Am. Jur. 2d, Sales and Use Taxes, § 112, we find this:

"The terms 'manufacturing' and 'processing' imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products." (p. 160.)

We think the narrow construction first urged by appellant (that the processes wherein the materials are consumed are preliminary to the manufacturing) is unwarranted under the facts here presented. The plant manager's testimony clearly indicated an integrated manufacturing operation beginning with the photographing of typed lists of the names and addresses of residents within a particular city which eventually go into the finished product of the city directory. In effect appellant is asserting the manufacturing process does not begin until a permanent image is actually transferred to paper for binding into the books. We cannot perceive legislative intent of any such restricted or impractical interpretation as that for which appellant contends, especially in view of the inclusion of the words "essential and necessary" in the statutory definition of property which is consumed. Had legislative intent been that which appellant contends such words are unnecessary. In our opinion the film, lithoplates, developer and other items are, as a practical matter, used in the actual process of manufacturing as contemplated by K. S. A. 1973 Supp. 79-3602 (*m*).

Nor do we think the items in question can properly be classified as machinery. A case in point under a similar statute is *Midwestern Press Inc. v. Commr. of Taxation*, 295 Minn. 59, 203 N. W. 2d 344.

There the court held that lithographic plates which are custom-made for a particular job in a commercial printing plant, usable for only a limited number of impressions and have value only as scrap at the conclusion of the run, are not machinery within the meaning of an exception to an exemption statute. In reaching this conclusion the court distinguished cases involving printing plates of a far more durable type. The Minnesota supreme court also approved the holding of the tax court that the term "consumed" used in the statute did not necessarily mean physical consumption but was broad enough to include economic consumption. Manufacturing machinery is permanent in nature but the plates involved here, along with the film, are used but once, then they become junk and are disposed of accordingly.

Appellant's principal argument is that the materials are not immediately consumed or dissipated. Appellant contends that use of the term "immediately" indicates a time referent and since there are varied time lapses in the consumption of the various items they are not immediately consumed. In *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation*, 163 Kan. 458, 183 P. 2d 234, this court was concerned with the construction of a word in our compensating tax act which was susceptible of more than one meaning. The court stated:

"Long ago, in *City of Emporia v. Norton*, 16 Kan. 236, we held that in the determination of legislative intent the court is not limited to mere consideration of words employed, but may properly look to the purpose to be accomplished, the necessity and effect of the statute, under the different constructions permitted by its terms." (p. 467.)

In *Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation*, 168 Kan. 227, 212 P. 2d 363, this statement appears:

"There is one basic principle about our sales tax act. It is that the ultimate consumer should pay the tax and no article should have to carry more than one sales tax." (p. 233.)

In *Gr. Inc. Tax Dept. v. Harbison-Walker Ref. Co.*, 113 Ind. App. 695, 48 N. E. 2d 834 (Transfer Denied), the court was confronted with a contention similar to that made here by appellant. A taxing statute prescribed a lower tax rate on income derived from the sale of material directly consumed in production. The statute defined "consumed" as immediate dissipation. The court stated:

"That there is here involved a dissipation or expenditure by use is a certainty beyond the realm of conjecture. The term 'immediate,' however, is one admitting of a wide variety of definitions. It is the indicium of a time interval as well as that of an interval of space. It can indicate relativity or continuity.

It is the opposite of ultimate. It is qualitative, not quantitative, relative, not absolute. In its strictest sense as a time referent it means the present instant, instantaneously, without appreciable lapse of time; but to give the term this literal interpretation would strip the section here in controversy of all practical sense and applicability. [pp. 699-700.]

.    .    .    .    .    .    .    .    .    .    .    .    .

"If, as appellant urges, the term 'immediate' as used in the statute is a time referent then his argument falls under the weight of authority in this and other states for it has been held generally that the construction of the term when it occurs in contracts or in statutes is, that the act referred to shall be accomplished within such convenient time as is reasonably requisite.   [Citations]." (p. 700.)

The court concluded that where silica refractory material used for lining open hearth furnaces could be used only for a few weeks or months due to the heat, such material was "consumed immediately".

There can be no doubt that even such items as the developer here involved are consumed or dissipated in the manufacturing process. In *Oxford Paper Co. v. Johnson*, 155 Me. 380, 156 A. 2d 235, a quantity of mercury purchased for use in the manufacture, for sale, of paper was the subject of a use tax abatement suit.   Abatement was asserted under a statute exempting tangible personal property which is consumed and destroyed or loses its identity in the manufacture of tangible personal property for later sale.   The mercury was constantly maintained in the machinery for manufacturing paper.   A reservoir of thirty-five tons of mercury was replenished constantly, day by day, with additional mercury to replace that which had become dissipated.   During each year, seven percent by weight, or approximately two and one-half tons, of all mercury thus utilized was lost in the manufacturing process.   The court held that this percentage was continually "consumed or destroyed" in the manufacture of tangible personal property and that the transaction in purchasing the mercury was not taxable.

In the case at bar consumption or dissipation of the property in question, as opposed to depreciation, breakage, wearing out or obsolescence, as in the case of permanent machinery or equipment, has been shown.   The dissipation of the developer was continuous. The entire process of manufacture occurs over a relatively short period of time, during which some consumption or dissipation takes place and after which the property or materials are rendered useless for all practical purpose.   The manufacture is accomplished within a time reasonably requisite.   Accordingly, we hold that the items are shown to have been immediately consumed within the purview of the exemption statute.

Appellant makes a further complaint that the trial court, based upon misinterpretation of a pretrial agreement, erroneously lumped all the items together on an all or nothing basis in its order of refund, thereby setting a bad precedent for some of the items. We cannot tell what items appellant has in mind beyond those discussed. We have indicated the obscure and ambiguous nature of the record with reference to some materials which we have not identified by name. That matter need not be further labored. The scanty record before us is not the same as that before the trial court. The burden here of demonstrating error in that court's ruling is on appellant. He has not done so and the judgment must be and is affirmed.

APPROVED BY THE COURT.