(673 P.2d 456)
No. 55,437

IN THE MATTER OF THE APPEAL OF STERLING DRILLING COMPANY FROM A DECISION OF THE BOARD OF TAX APPEALS OF THE STATE OF KANSAS. STERLING DRILLING COMPANY, *Appellee,* v. KANSAS DEPARTMENT OF REVENUE, *Appellant.*

Opinion filed December 22, 1983.

*Nancy E. Freund* and *S. Lucky DeFries,* of the Department of Revenue, for the appellant.

*John C. Frieden,* of Ralston & Frieden, of Topeka, for the appellee.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge, Assigned; and FREDERICK WOLESLAGEL, District Judge, Retired, Assigned.

BULLOCK, J.: Sterling Drilling is in the business of drilling wells. Among others, it drills wells for natural gas storage and salt water disposal. As a result of Sterling's services in drilling these wells, the State Board of Tax Appeals assessed Sterling $154,146 in sales taxes and penalties. Sterling appealed to the district court which reversed the Board, holding Sterling's services were excluded from sales tax under what is now K.S.A. 1982 Supp. 79-3603($p$). The State appeals.

We should note, preliminarily, the appropriate scope of judicial review. Two rules are applicable:

1. "A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority." *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968).

2. "The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature.

"While the administrative interpretation of a statute should be given consid-

eration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts." *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶¶ 4 & 5, 518 P.2d 453 (1974).

In our view, this case turns upon the interpretation and application of section 79-3603($p$), a matter of statutory construction covered by the second rule mentioned and clearly within the province of the trial court and this court to determine.

We turn next to the text of the relevant portions of our general sales tax statute, which, after imposing general sales taxes, in section 79-3603($p$) provides the following limitation:

"[E]xcept that no tax shall be imposed upon the service of installing or applying tangible personal property in connection with the original construction of a building or facility . . . .

"For the purposes of this subsection:

. . . .

" '[F]acility' shall mean a mill, plant, refinery, oil or gas well, water well . . . including the land improvements immediately surrounding such facility . . . ."

The State's contention, simply put, is that, as used in this statute, a gas well is only a gas well and a water well is only a water well if the driller intends to take gas or water, respectively, *from* such wells. Wells *into* which the driller plans to pump gas or water, argues the State, are not gas and water wells at all. Thus, the State urges services in drilling gas storage and water disposal wells are outside the exclusion from sales taxation provided by K.S.A. 1982 Supp. 79-3603($p$) and subject to tax. The test for taxation, the State contends, should be the "intent," "state of mind" or "aspiration" of the person actually drilling the well: only if the driller *intends* to strike oil, gas or water would no tax be owed. Sterling, on the other hand, argues that, insofar as the statute is concerned, a "well is a well," whether gas, water or oil are coming up or going down and that such elusive concepts as "driller's intent" should not determine taxability of important public services.

Before proceeding with an analysis of the case at issue, it is appropriate that we review the controlling rules of statutory construction. Construction of a statute is required when statutes are ambiguous. See *State ex rel. Stephan v. Martin,* 230 Kan. 747, Syl. ¶ 3, 641 P.2d 1011 (1982). A statute is ambiguous when there are two or more interpretations which can fairly be made.

See *State ex rel. Stephan v. Martin*, 230 Kan. at 747, Syl. ¶ 3. The present appeal, in our opinion, turns upon whether Sterling's or the State's interpretation of 79-3603(*p*) is correct. Because neither interpretation places an unnatural reading on the statute, judicial construction is required.

In construing a statute, a court must use reason and consider the practicalities of the matter addressed. *Anderson v. Overland Park Credit Union*, 231 Kan. 97, Syl. ¶ 5, 643 P.2d ·120 (1982). A statute should never be interpreted to lead to uncertainty, injustice or confusion. *Coe v. Security National Ins. Co.*, 228 Kan. 624, Syl. ¶ 2, 620 P.2d 1108 (1980). The effects of the statute under the interpretations urged by the parties should be considered. *Brown v. Keill*, 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 (1978); *State, ex rel., v. City of Overland Park*, 215 Kan. 700,. 527 P.2d 1340 (1974).

Little legislative history exists for 79-3603(*p*). The Kansas Supreme Court found the earlier version of the statute unconstitutionally vague in *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65, *modified on other grounds* 221 Kan. 752 (1977). The resulting amendment replaced the word "structure" with the present "facility" and "building" and added the definition of "facility." Neither the original history of the statute nor the history of that amendment, however, indicates any definition of "oil or gas well" or "water well." More relevant to our consideration is what is now K.S.A. 1982 Supp. 79-3606(*n*), a companion provision excluding from sales taxation all sales of materials used in the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property. This subsection, together with 79-3603(*p*), clearly demonstrates the general legislative intent to exclude from sales taxation activities relating, *inter alia*, to oil, gas and water production.

A careful examination of 79-3603(*p*) also reveals, in our judgment, a clear motive on the part of the legislature to promote real estate and mineral development generally: It is not simply wells which are exempted, but all "original construction" of "buildings" and "facilities," as defined. Nothing on the face of the statute shows any indication to limit the definition of gas or water wells to those *from which* the driller aspires to extract gas or water. An irony appearing in the record in this case provides

ample illustration of the fallacy of the State's "original intent" argument: while drilling some of the "storage" and "disposal" wells in question, Sterling *struck oil!*

The State argues that services in drilling "producing wells" are excluded from taxation and that services in drilling "storage and disposal wells" are taxable. Yet, if the State's proposed "original intent" test were adopted this result would not necessarily follow. For example, services in drilling a producing oil well would be subject to tax if the driller "intended" to drill a storage well but struck oil instead. Conversely, the "intent" to strike oil would exempt services rendered in drilling a dry hole, even if that dry hole were later converted to a storage or disposal well. Further, whose intention should we examine? The driller? The landowners? The lessees? Other royalty owners? The State's proposal is unworkable, and thus unlikely to have been legislatively intended.

In summary, from the language of the statute (indicating no intended limitation as to "type" of well excluded), from the general scheme and history of the entire statute and from principles of logic and practicality, we conclude K.S.A. 1982 Supp. 79-3603(p) excludes from sales taxation, *inter alia*, all gas and water wells irrespective of whether those wells were originally intended to be storage, disposal or production wells.

Accordingly, the judgment by the trial court is affirmed.