(713 P.2d 962)

No. 57,395

In the Matter of the Appeal of GEORGE ANGLE, d/b/a FRONTIER OIL COMPANY.

Opinion filed January 30, 1986.

*John C. Frieden*, of Ralston, Frieden & Starrett, of Topeka; *Stanley G. Andeel*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita; and *Donald P. Schnacke*, of Topeka, for appellant George Angle, d/b/a Frontier Oil Company.

*Nancy E. Freund*, of the Kansas Department of Revenue, of Topeka, for appellee State of Kansas.

Before REES, P.J., C. FRED LORENTZ, District Judge, assigned, and JOHN W. BROOKENS, District Judge Retired, assigned.

LORENTZ, J.: This is an appeal by George Angle, d/b/a Frontier Oil Company, from an order of the Sedgwick County District Court affirming the determination of the Board of Tax Appeals that drill bits, casing and cement used in the drilling of an oil well are subject to the payment of a sales tax and are not exempt items under K.S.A. 79-3606(n).

The evidence is essentially undisputed, but a recitation is helpful to understanding the nature of the problem.

George Angle, d/b/a Frontier Oil Company, appellant, is in the business of oil and gas drilling and production in the "Barton Arch" area of western Kansas. The drill bits, cement and casing involved in this appeal are all items used in the drilling of a well prior to production.

During the initial stage of drilling, a 12-¼ inch milltooth bit is used to drill to a depth of 250 feet. On an average, this process takes about three hours. A new 12 ¼-inch milltooth bit generally

can be used for sixteen hours of drilling or about five to seven wells.

After the 250-foot hole is drilled, 8 ⅝-inch pipe called casing is cemented into the hole. The primary purpose of this "surface" casing is to protect any fresh or ground water from contamination in compliance with Kansas Corporation Commission regulations. Neither the casing nor the cement is recoverable.

Following the setting of this "surface" casing, a 7 ⅞-inch milltooth bit is attached to the drilling rig, inserted down to the bottom of the hole and drilling commences down to 1,700 feet. The average life of this bit is approximately 15 hours. Since it takes approximately 15 to 17 hours to reach a depth of 1,500 to 1,700 feet, the 7 ⅞-inch milltooth bit is replaced with an "insert" or "button" bit. The 7 ⅞-inch milltooth bit is discarded or, if it has any useful life left, may be used on another well. The insert or button bit contains teeth of extremely hard tungsten carbide and is used to drill the remaining distance to about 3,500 feet. This button bit will normally last 18 to 100 hours, depending on the formation being drilled through.

When any of the bits are worn out, they are normally scrapped and not sold or retipped, although occasionally an equipment company may try to rebuild them. In any event, once used up, they have no junk value to appellant.

Once the depth is reached, 4½-inch to 5½-inch casing is run down the hole. Approximately 200 sacks of cement are used to cement in this casing from the bottom (3,500 feet) up to about 2,800 feet. Approximately 500-550 sacks of cement are also used to cement in the casing from 1,200 feet to the surface. The purpose of cementing in the casing is due to the highly corrosive nature of the underground water which would otherwise eat through the casing and flood out the well. The casing between 1,200 feet and 2,800 feet is not cemented in, but, like that which is cemented in, is nonrecoverable.

Following an audit, appellant was assessed an additional use tax on casing which he had purchased without paying sales tax and subsequently used in the above-described drilling operation. Appellant objected to the assessment and additionally requested a refund of all retailers' sales taxes paid on purchase of cement and drill bits used in the drilling operation, claiming that casing, cement and drill bits should be considered exempt from taxation under K.S.A. 79-3606(n) which, in describing sales of

materials exempt from the tax sets out "all sales of tangible personal property which is consumed in the production, manufacture, processing, mining, drilling, refining or compounding of personal property."

The issues to be decided are whether the decision of the Kansas Board of Tax Appeals, as affirmed by the Sedgwick County District Court, was arbitrary, capricious and not supported by substantial competent evidence, and whether the Board of Tax Appeals and the district court erred in finding that drill bits, casing and cement are not immediately consumed or dissipated in the drilling and production of oil and gas as contemplated by K.S.A. 79-3602(m) and therefore are not entitled to an exemption from taxation under K.S.A. 79-3606(n).

The standard of review to be applied by this court in reviewing a decision of the Board of Tax Appeals was restated recently in *Sterling Drilling Co. v. Kansas Dept. of Revenue,* 9 Kan. App. 2d 108, 109, 673 P.2d 456 (1983), *rev. denied* 234 Kan. 1078 (1984), where the court said:

"Two rules are applicable:

"1. 'A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority.' *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, Syl. ¶ 1, 436 P.2d 828 (1968).

"2. 'The interpretation of a statute is a question of law and it is the function of a court to interpret a statute to give it the effect intended by the legislature.

" 'While the administrative interpretation of a statute should be given consideration and weight it does not follow that a court will adhere to the administrative ruling where the statute is clear and the administrative ruling is erroneous. The final construction of a statute rests within the courts.' *Amoco Production Co. v. Armold, Director of Taxation,* 213 Kan. 636, Syl. ¶¶ 4 & 5, 518 P.2d 453 (1974)."

Appellant argues that the decision of the Board of Tax Appeals was not supported by substantial competent evidence and was arbitrary and capricious. Appellant's contention is based on the circumstances surrounding the issue of an order *nunc pro tunc,* the contention being that the Board of Tax Appeals was confused.

The original order contained a clause as follows:

"The casing and cement become part of the drilling rig and are taxed as property. This is a capital expenditure for which depreciation is permitted."

In the *nunc pro tunc* order, that phrase was deleted. Appel-

lants suggest the language was deleted because the casing and cement were not part of the drilling rig, and go on to assert that the record does not contain anything to support a contention that the cement and casing were a part of the drilling rig.

The mere use of *nunc pro tunc* order by the Board of Tax Appeals does not mean they were confused. The purpose of a *nunc pro tunc* order is not to change or alter a judgment previously rendered, but to enter now for then an order previously made. *Mathey v. Mathey,* 175 Kan. 446, Syl. ¶ 4, 264 P.2d 1058 (1953). See also 2 Am. Jur. 2d, Administrative Law § 521, p. 330, where it is stated:

> "The proper function of a nunc pro tunc order is not to correct some affirmative action of the court which ought to have been taken, but its true purpose is to correct the record which has been made, so that it will truly record the action really had, but which through some inadvertence or mistake has not been truly recorded; in other words, it is an order to make the record speak the truth."

The record, as pointed out by appellant, contained nothing to support a finding that the cement and casing were a part of the oil rig. The record does disclose that the Board found the cement and casing not subject to the exemption, and the order *nunc pro tunc* merely corrects the Board's findings by deleting that which was not found. As such, it does not rise to arbitrariness or capriciousness, nor is the finding of the Board of Tax Appeals unsupported by the evidence.

Since the evidence is clear that the casing and cement become part of the well itself, and since the evidence supports the Board's finding that a production well may last several years to as much as 50 years, the Board's decision was clearly supported by substantial competent evidence.

Likewise, the record discloses sufficient evidence to support the Board's finding that drill bits were more in the nature of tools or equipment and do not fall within the immediately consumed exception of K.S.A. 79-3606(n).

Appellant next contends that the district court erred in finding that drill bits, casing and cement are not immediately consumed or dissipated in the drilling and production of oil and gas as contemplated by K.S.A. 79-3602(m) and therefore not entitled to an exemption from taxation under K.S.A. 79-3606(n). Resolution of this issue turns upon the interpretation and application of the referenced statute. K.S.A. 79-3606(n) (amendments at L. 1985, ch. 171, § 11 and ch. 331, § 1 not applicable to this case) provides:

"The following shall be exempt from the tax imposed by this act:

. . . .

"(n) all sales of tangible personal property which is consumed in the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property, the providing of services or the irrigation of crops for ultimate sale at retail within or without the state of Kansas; and any purchaser of such property may obtain from the director of taxation and furnish to the supplier an exemption certificate number for tangible personal property for consumption in such production, manufacture, processing, mining, drilling, refining, compounding, irrigation and in providing such services."

Appellant's contention is that the drill bits, casing and cement are consumed in the drilling of a well and should be exempt from the tax. Attention must therefore be given to the definitional section of the sales tax provisions found at K.S.A. 79-3602(m) (amendment at L. 1985, ch. 330, § 1 not applicable) which provides:

"(m) 'Property which is consumed' means tangible personal property which is essential or necessary to and which is used in the actual process of and immediately consumed or dissipated in (1) the production, manufacture, processing, mining, drilling, refining or compounding of tangible personal property, (2) the providing of services or (3) the irrigation of crops, for sale in the regular course of business, and which is not reusable for such purpose."

We must deal in this case with the meaning of "consumed" as used in the foregoing statutes. Apparently that term has never been judicially construed in the context of these statutes, and is subject to several interpretations.

The rules for statutory construction are set out in the recent case of *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d at 109-10, which states:

"Construction of a statute is required when statutes are ambiguous. See *State ex rel. Stephan v. Martin*, 230 Kan. 747, Syl. ¶ 3, 641 P.2d 1011 (1982). A statute is ambiguous when there are two or more interpretations which can fairly be made. See *State ex rel. Stephan v. Martin*, 230 Kan. 747, Syl. ¶ 3."

Also, again citing *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d at 110, we find the following additional rules set out:

"In construing a statute, a court must use reason and consider the practicalities of the matter addressed. [Citation omitted.] A statute should never be interpreted to lead to uncertainty, injustice or confusion. [Citation omitted.] The effects of the statute under the interpretations urged by the parties should be considered. [Citations omitted.]"

The burden is on the taxpayer to bring himself within the exemption because taxation is the rule and exemption is the exception. See *R. L. Polk & Co. v. Armold,* 215 Kan. 653, 655, 527 P.2d 973 (1974), citing *Assembly of God v. Sangster,* 178 Kan. 678, 290 P.2d 1057 (1955), and *Warren v. Fink,* 146 Kan. 716, 72 P.2d 968 (1937).

The *Polk* case, 215 Kan. 653, appears to be the only Kansas case concerned specifically with the K.S.A. 79-3606(n) exemption. The court in that case found that the lithoplates used in the process of printing telephone directories were "consumed" under the provisions of K.S.A. 79-3606(n). In making its decision, the court relied on the Minnesota case of *Midwestern Press, Inc. v. Commr. of Taxation,* 295 Minn. 59, 203 N.W.2d 344 (1972). In *Polk,* 215 Kan. at 658, the court concluded:

"In the case at bar, the consumption or dissipation of the property in question, as opposed to depreciation, breakage, wearing out or obsolescence, as in the case of permanent machinery or equipment, has been shown. The dissipation of the developer was continuous. The entire process of manufacture occurs over a relatively short period of time, during which some consumption or dissipation takes place and after which the property or materials are rendered useless for all practical purpose. The manufacture is accomplished within a time reasonably requisite. Accordingly, we hold that the items are shown to have been immediately consumed within the purview of the exemption statute."

In the *Polk* case, as well as the *Midwestern* case, 295 Minn. 59, the lithoplates and related materials were used in one process and were discarded as junk thereafter.

In the case before us, the casing, cement and drill bits are all standard items utilized in the drilling of any typical well. Although the drill bits may be worn down at a faster pace depending on the particular formation being drilled into, it is also possible to use the bits in another hole if they haven't been worn out completely. This is a fundamental distinction from the lithoplates in the *Polk* and *Midwestern* cases. Another fundamental difference is that in the case at bar, the drill bits are not designed solely for use in a specific well, unlike lithoplates which are designed and subject for use only for one particular printing job.

Appellant points out that *Sterling Drilling Co. v. Kansas Dept. of Revenue,* 9 Kan. App. 2d 108, contained language which was crystal clear in setting out the legislative intent. The particular language relied on is found at page 110 when the court, referring to K.S.A. 79-3606(n), stated:

"This subsection, together with 79-3603(p), clearly demonstrates the general legislative intent to exclude from sales taxation activities relating, *inter alia*, to oil, gas and water production."

Appellant contends this language makes it clear that activities relating to oil and gas drilling and production were intended by the legislature to be exempt from taxation.

However, the legislative intent does not mandate that *all* activities relating to oil and gas drilling and production be exempt. The definition itself is limited:

" 'Property which is consumed' means . . . property . . . which is used in the actual process of and immediately consumed or dissipated in (1) the . . . drilling . . . *and which is not reusable for such purpose.*" (Emphasis added.) K.S.A. 79-3602(m).

Because drill bits may be used in the drilling of more than one well, this language appears to speak specifically against the application of the exception in this instance.

Because casing and cement become one permanent structure, and since neither can be removed once the cementing process is completed, it would appear they should be considered together for our discussion purposes. Either both should be subject to tax, or both should be exempt. There are no apparent cases in point. We must therefore analyze just what happens to the casing and cement. As argued by appellant, once the casing is put into the ground and cemented in, "there is no known method for recovery"; therefore the cement and casing are immediately and directly consumed.

The fallacy of this argument, however, is that the well itself would be useless without the casing being cemented in. The casing and cement become integrated into the well itself, not the oil or gas that might flow from the well.

Appellant's contention that the casing and cement are analogous to the lithoplates discussed previously herein is totally without merit. The facts in *R. L. Polk & Co. v. Armold*, 215 Kan. 653, were that the lithoplates, after the manufacturing process, served no useful purpose. In the case at bar, the casing and cement serve a useful purpose throughout the life of the well which, according to the testimony in the record as found by the Board of Tax Appeals, could be as long as 50 years. It cannot be said, therefore, that the casing and cement were consumed in the drilling process itself.

For the foregoing reasons, we hold that the district court did not err in finding that drill bits, casing and cement were not exempt from taxation under K.S.A. 79-3606(n).

Affirmed.