No. 80,523

LINK, INC., LOU ANN KIBBEE, and BRIAN ATWELL, *Appellees,* v. CITY OF HAYS, *Appellant.*

(972 P.2d 753)

Opinion filed January 22, 1999.

*John T. Bird,* of Glassman, Bird & Braun, L.L.P., of Hays, argued the cause, and *Todd R. Stramel,* of the same firm, was with him on the briefs for appellant.

*David P. Calvert,* of David P. Calvert, P.A., of Wichita, argued the cause, and *James L. Germer,* of Kansas Advocacy and Protective Services, Inc., of Manhattan, was with him on the briefs for appellees.

*Donald L. Moler, Jr.,* of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

*Michael N. Flesher,* of Hays, was on the brief for *amicus curiae* Kansas Association of Centers for Independent Living.

The opinion of the court delivered by

SIX, J.: This is a first impression K.S.A. 58-1301 *et seq.,* Americans with Disabilities Act (ADA), 42 U.S.C. 12101 *et seq.* (1994) mandamus action. Link, Inc., a center for independent living, and two wheelchair users (Link) sought a writ of mandamus directing the City of Hays (City) to enforce the ADA for existing Title III facilities (public accommodations and services operated by private entities). The district court interpreted K.S.A. 58-1304(a)(3), agreed with Link's contentions, and granted the writ. The writ di-

rects the City to enforce the ADA as to all existing public accommodations, even those built solely with private funds before the ADA was enacted. The district court acknowledged that most of the business buildings in the City are included in that category. The City appeals.

An *amicus curiae* brief supporting the City's position was filed by the League of Kansas Municipalities. Our jurisdiction is under K.S.A. 20-3018(c), a transfer from the Court of Appeals on our own motion.

The question is whether K.S.A. 58-1304(a)(3) requires the City to enforce the ADA accessibility standards for existing Title III public accommodations and commercial facilities built without municipal funds. Or, in the words of the district court: "[D]oes the city have the legal responsibility to enforce accessibility standards for privately owned and privately funded buildings built before the standards were required for new construction?" The answer is, "No." We reverse the district court and vacate the writ of mandamus.

## DISCUSSION

This case arose because a motel in the City did not have a wheelchair accessible restroom. Link complained to the City. The City responded that it had no duty to enforce the ADA as to the motel. Link's mandamus action against the City followed.

The interpretation of K.S.A. 58-1304(a)(3) is a question of law; thus, our review is unlimited. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, Syl. ¶ 1, 953 P.2d 1027 (1998).

### ADA - Background

The current version of K.S.A. 58-1304 was enacted in 1994. Before 1994, cities were not obligated to enforce the ADA as to existing Title III buildings built solely with private funds. Our inquiry here is whether the 1994 legislation required cities to do so.

Title III of the ADA grants rights to disabled customers of private businesses, enabling individuals with disabilities to participate more fully in mainstream society. 1 Perritt, Americans with Disabilities Act Handbook, p. 246 (3d ed. 1997) (ADA Handbook).

K.S.A. 58-1301b(d) defines Title III:

" 'Title III' means 28 CFR Part 36, nondiscrimination on the basis of disability by public accommodations and commercial facilities as required by section 301 *et seq.* of the Americans with disabilities act of 1990, 42 USCA 12,181 *et seq."*

A broad spectrum of private and public entities are subject to Title III (for example, gas stations, hotels, health clubs, restaurants, theaters, and hospitals). A Title III facility has a prima facie duty:

"1. To make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to disabled individuals.

"2. To remove architectural barriers and communication barriers that are structural in nature in existing facilities when such removal is readily achievable.

"3. To provide auxiliary aids and services necessary to ensure that disabled persons are not excluded, denied services, segregated, or treated differently from other individuals.

"4. To make goods, services, facilities, privileges, advantages, or accommodations available through alternative methods when such methods are readily achievable, and when the removal of a barrier is not readily achievable. . . .

"5. To design and construct new facilities and alterations in existing facilities to make the facilities readily accessible to and usable by persons with disabilities."

ADA Handbook, p. 247 (citing 42 U.S.C. § 12182(b)(2)(A)(ii)-(v) (1994); 42 U.S.C. § 12183 (a)(1) (1994).

Liability based on the above duties may be avoided by showing: (1) modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations; (2) removal of barriers is not readily achievable; (3) meeting the requirements is structurally impracticable; (4) cost is disproportionate to the accessibility benefit; and (5) the use of auxiliary aids and services would result in fundamental alteration or undue burden. ADA Handbook, p. 247-48 (citing 42 U.S.C. § 12182(b)(2)(A)(ii), (iv), and (v); 42 U.S.C. § 12183(a)(1).

The legislature expressed its intent in K.S.A. 58-1303: "This act is intended to prohibit discrimination on the basis of disability by Title II and Title III entities. All facilities covered by this act are to be designed, constructed and altered to be readily accessible to and usable by individuals with a disability." Our interpretive responsibility is to identify the City's role in the enforcement mechanism contemplated by the legislature.

Link argues municipalities are the Title III enforcers for all public accommodations. The City disagrees. The City contends it is only charged with enforcing Title III as to municipal structures, construction of new facilities, and renovation of existing structures. Enforcement is effected by issuing or denying building permits.

The district court observed that if the City is not responsible for enforcing Title III, then the "enforcement of the majority of buildings would not be clearly dealt with by the act." Link is not without redress for the alleged Title III violations. The ADA provides an extensive mechanism of enforcement. Title III plaintiffs have a federal court remedy. They may sue owners of public accommodations who do not comply with the ADA. Specific relief requiring owners to make their goods and services accessible to the disabled is available. 42 U.S.C. § 12188(a)(1) provides a private right of action for injunctive relief. See 42 U.S.C. § 2000a-3(a) (1994). ADA plaintiffs may also seek attorney fees. Further, the United States Attorney General must investigate alleged violations of Title III, and may sue for pattern-and-practice violations or discriminatory acts presenting issues of "general public importance." See 42 U.S.C. § 12188(b)(1)(A)(i) and § 12188(b)(1)(B). Civil penalties to vindicate the public interest may be assessed of up to $50,000 for a first violation and up to $100,000 for additional violations. ADA Handbook, p. 362 (citing 42 U.S.C. § 12188[b][2][C]).

The State of Kansas is allowed to supply additional methods of enforcement. State ADA enforcement responsibilities are controlled by K.S.A. 58-1304(a). Paragraphs (1) and (2) of subsection (a) deal with public schools and government facilities and are not at issue here. Enforcement in these areas is assigned to the State Board of Education and the Secretary of Administration, respectively. Paragraph (4) deals with new construction, placing enforcement on "the building inspector or other agency or person designated by the governmental entity in which the facility is located." K.S.A. 58-1304(a)(4). The City acknowledges that it has this responsibility. K.S.A. 58-1304(b) states: "The attorney general of the state of Kansas shall oversee the enforcement of this act."

It is the remaining provision of the enforcement statute, K.S.A. 58-1304(a)(3), that must be interpreted to decide the issue here.

Before the 1994 amendments, K.S.A. 1993 Supp. 58-1304(3) provided:

"For all construction or renovation where funds of a county, municipality or other political subdivision are utilized, the governing body thereof or an agency thereof designated by the governing body [shall be responsible for enforcement]."

After the 1994 amendments, K.S.A. 58-1304(a)(3) provides:

"for all existing facilities, and the design and construction of all new, additions to and alterations of, any local government facilities where funds of a county, municipality or other political subdivision are utilized, the governmental entity thereof or an agency thereof designated by the governmental entity [shall be responsible for enforcement]."

The district court reasoned that the 1994 amendments changed the City's K.S.A. 58-1304 duties. The effect of an affirmance of the district court's ruling would be that Kansas municipalities must bring all buildings open to the public into compliance with Title III of the ADA. The *amicus* emphasizes the broad impact of affirming the district court's mandamus writ.

Link, although not arguing with the *amicus'* conclusion, asserts that the 1994 amendments to K.S.A. 58-1304 made a substantial change in existing law. Link's position is that

"all existing public accommodations shall conform to the [ADA] by being altered where it is readily achievable. The City of Hays has the responsibility for enforcing this law for existing facilities, and may refer evidence concerning ADA violations to the city attorney, who may then file a lawsuit asking for an injunction requiring a facility to perform alterations to comply with the ADA. . . ."

Although the result described by Link's position is commendable, we are limited to interpreting statutory law as it is, not as it should be; thus, we disagree with Link's conclusion. Preliminarily, we dispose of the City's contention that the Kansas Attorney General is responsible for enforcing Title III as to public accommodations built with private funds. In the federal scheme, the United States Attorney General must investigate alleged violations of Title III. 42 U.S.C. § 12188(b)(1)(A)(i). Thus, the federal statute provides a mechanism of enforcement through the Attorney General. However, the Kansas Attorney General, who is not a party to this

action, is only responsible for overseeing enforcement. Link does not contend Title III enforcement responsibility lies with the Kansas Attorney General. The role of the Kansas Attorney General in overseeing enforcement of the ADA is not before us in this case.

## Ambiguity

The first statutory interpretation question we must answer is whether K.S.A. 58-1304(a)(3) is ambiguous. The parties spend much time in their briefs invoking rules of grammar in their search for legislative intent. The district court held K.S.A. 58-1304(a)(3) is unambiguous, agreeing with the reading advanced by Link.

Our rules on statutory ambiguity teach us that if a statute is plain and unambiguous, we must give effect to the expressed statutory language. *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 7, 930 P.2d 1366 (1997). A statute is ambiguous when two or more interpretations can fairly be made. *Sterling Drilling Co. v. Kansas Dept. of Revenue*, 9 Kan. App. 2d 108, 109, 673 P.2d 456 (1983), *rev. denied* 234 Kan. 1078 (1994).

Two distinct interpretations of K.S.A. 58-1304(a)(3) are advanced by the parties. Link argues that the opening clause of K.S.A. 58-1304(a)(3), "for all existing facilities," means all existing public accommodations must be brought into compliance by the municipality in which they are located. In agreeing with Link, the district court pointed out there are two groups of structures in subsection (3). The first group is "all existing facilities." The second group is "the design and construction of all new, additions to and alterations of, any local government facilities." According to the district court, these two distinct groups are clearly separated by "and"; consequently, no ambiguity exists.

Both the City and the *amicus* counter that the K.S.A. 58-1304(a)(3) clause "for all existing facilities" is modified by the later statement "where funds of a county, municipality or other political subdivision are utilized." Thus, they interpret K.S.A. 58-1304(a)(3) to state: "for all existing facilities where funds of a county, municipality or other political subdivision are utilized [enforcement lies with the city]." The *amicus* argues that this modification is the only

logical modification because "to specify that local government facilities utilize local government funds is superfluous." We agree.

The district court relied on a grammatical principle known as the "last antecedent rule." The last antecedent rule says qualifying words are "ordinarily confined to the last antecedent, or to the words and phrases immediately preceding." *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 504, 438 P.2d 732 (1968). This rule, applied to K.S.A. 58-1304(a)(3), would preclude modification of the phrase "all existing facilities" by "where funds of a county, municipality or other political subdivision are utilized." However, the last antecedent rule is flexible. See *NEA-Goodland v. U.S.D. No. 352*, 13 Kan. App. 2d 558, 561-62, 775 P.2d 675, *rev. denied* 245 Kan. 785 (1989) (if application of the last antecedent rule " 'would involve an absurdity, do violence to the plain intent of the language, or if the context for other reason requires a deviation from the rule, it will be necessary and proper to look for another antecedent' ") (quoting *In re Petition of School District of Omaha*, 151 Neb. 304, 307-08, 37 N.W.2d 209 [1949]). Under the district court's interpretation, the last antecedent is "local government facilities," modified by "where funds of a county, municipality or other political subdivision are utilized." We disagree with the district court's interpretation.

Professor Karl N. Llewellyn, commenting on the Canons of Statutory Construction, observes: "There are two opposing Canons on almost every point." Llewellyn, The Common Law Tradition: Deciding Appeals, p. 521 (1960). His classic demonstration of this proposition appears in Appendix C., p. 527: "Qualifying or limiting words or clauses are to be referred to the next preceding antecedent," but "[n]ot when evident sense and meaning require a different construction."

We have difficulty imagining the building or alteration of a local government facility that would not use local government funds. A creditable, plain-reading argument can be made for either parties' interpretation. Because neither interpretation places an unnatural reading on the statute, judicial construction is required. See *Sterling Drilling Co.,* 9 Kan. App. 2d at 110.

The primary rule of statutory construction is to give effect to the statute's clear meaning. If the statute is ambiguous, we are to determine legislative intent and give effect to that intent. *Kansas Power & Light Co. v. Kansas Corporation Comm'n*, 237 Kan. 394, Syl. ¶ 2, 699 P.2d 53 (1985). Having concluded that the statute is ambiguous, we next ask: What did the legislature intend K.S.A. 58-1304(a)(3) to mean?

## Legislative Intent

Link strongly suggests that we look to K.S.A. 58-1303. K.S.A. 58-1303 says:

"This act is intended to prohibit discrimination on the basis of disability by Title II and Title III entities. All facilities covered by this act are to be designed, constructed and altered to be readily accessible to and usable by individuals with a disability."

The *amicus* contends the 1994 amendments to K.S.A. 58-1304(a)(3) were not intended to be a departure from existing law, but were intended to bring Kansas up-to-date with federal law. Clearly, before the 1994 amendments, municipalities were not charged with enforcing the ADA as to existing public accommodations built solely with private funds. Reading K.S.A. 58-1304(a)(3) as the *amicus* suggests, there is no substantial departure from prior law. Thus, under the rationale advanced by the *amicus*, if the legislature intended a major departure in 1994, the departure would have been identified in the legislative history. We believe the *amicus* crafts a logical argument.

## The ADA's Legislative History

The legislative history of the 1994 amendments to K.S.A. 58-1304 reveals that no major change was intended by the legislature. The principal aim of the 1994 amendments was to harmonize state law with federal law and, in so doing, make ADA compliance easier for the private sector. The 1994 legislative committee minutes specifically address the question of whether the enforcement role of government entities would change after the amendments. No enforcement roles were to change.

In 1994, House Bill 3028 was drafted as a joint effort (H.B. 3028 became L. 1994, ch. 195, amending K.S.A. 58-1304). The agencies involved included the Kansas Attorney General, Department of Administration, Division of Architectural Services, Kansas Commission on Human Rights, the Independent Living Centers, and the state ADA coordinator. Mary Jane Stattelman, an Assistant Attorney General, testified in committee that the changes were necessary to simplify the law. She said that in 1992, the legislature amended K.S.A. 58-1301 *et seq.* to assist disabled individuals in obtaining access to public accommodations in Kansas. However, the discrepancies between the 1992 version of K.S.A. 58-1301 *et seq.* and the federal ADA caused confusion for business owners. Ms. Stattelman cited the following example:

"For instance, the federal act exempts churches and private clubs yet the current state law covers these entities; federal law makes a distinction between a public accommodation (*i.e.* restaurant or grocery store) and a commercial facility (*i.e.* a warehouse); however, the current state law does not make this distinction." Testimony on Behalf of Attorney General Robert T. Stephan, House Committee on Public Health and Welfare (Feb. 22, 1994).

Ms. Stattelman also observed, as summarized in the committee minutes: *"Changes proposed do not change the enforcement role of any governmental entity* and should simplify the building code officials' role. . . . [T]here will be no fiscal impact, and [the changes] actually may decrease costs of complying with the Americans [with] Disabilities Act." (Emphasis added.) Minutes of the House Committee on Public Health and Welfare (Feb. 22, 1994).

Further testimony was offered by the Kansas Commission on Disability Concerns and the state ADA coordinator. "This bill would change the current language regarding the specifications for making buildings accessible to people with disabilities to more closely parallel the Americans with Disabilities Act Accessibility Guidelines." Testimony on H.B. 3028 by Martha Gabehart, Kansas Commission on Disability Concerns, House Committee on Public Health and Welfare (Feb. 22, 1994). "House Bill 3028 parallels the Americans with Disabilities Act. There is no fiscal note involved in this bill nor is there any hardship to consider." Testimony of Jane

Knight, state ADA Coordinator, House Committee on Public Health and Welfare (Feb. 22, 1994).

Testimony addressing H.B. 3028 consistently stated that the amendments were designed to bring state and federal law together. There are no specific references in the legislative history to a new K.S.A. 58-1304(a)(3) enforcement requirement by municipalities.

Link argues that if the City does not have the duty to enforce the ADA as to existing Title III facilities, no Kansas entity does. Thus, Link concludes, the mandate of K.S.A. 58-1301 that all existing facilities comply with the ADA is meaningless. The City counters that the ADA is geared to the future, its goal being that over time, access will be the rule rather than the exception, citing U.S. Equal Employment Opportunity Commission & U.S. Department of Justice, ADA Handbook (1992).

The positions advanced by the parties frame a major policy question for the State, a question best answered by the legislature.

Reversed. The writ of mandamus is vacated.