The Honorable Richard Alldritt State Representative, 105th District 615 W. 15th Harper, Kansas 67058
Dear Representative Alldritt:
You request our opinion regarding whether the office of a county attorney must comply with the Americans with Disabilities Act. You also ask, if it is determined that the office is required to comply, what entity is responsible for ensuring that the office meets the requirements of the Act.
As a means of ensuring the nondiscriminatory treatment of persons with disabilities, the United States Congress enacted the Americans with Disabilities Act of 1990 (ADA).[1] The ADA consists of several titles, the application of each being determined by the activity or entity involved. Services, programs and activities of a public entity, which includes any unit of local government,[2]
are subject to Title II[3] of the ADA.[4]
"Subject to the provisions of [Title II of the ADA], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."[5]
Similarly:
 "Except as otherwise provided in [28 C.F.R.] § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or usable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."[6]
A public entity is required to operate a service, program, or activity "so that the service, program, or activity, when viewedin its entirety, is readily accessible to and usable by individuals with disabilities."[7] A public entity may decide to undertake structural changes to facilities in order to meet its obligation under the ADA,[8] provided the public entity follows the standards set forth in the Uniform Federal Accessibility Standards (UFAS)[9] or the Americans with Disabilities Accessibility Guidelines for Buildings and Facilities (ADAAG)[10]
when designing and constructing such structural changes.[11]
However, the ADA does not:
 "(1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;
 "(2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or
 "(3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with [28 C.F.R.] § 35.150(a) of this part would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity."[12]
The United States Attorney General has through regulations[13]
provided means by which a public entity may meet its obligations under Title II of the ADA without undertaking structural changes.
4 "(1) General. A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of [28 C.F.R.] § 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.
 "(2) Historic preservation programs. In meeting the requirements of [28 C.F.R.] § 35.150(a) in historic preservation programs, a public entity shall give priority to methods that provide physical access to individuals with disabilities. In cases where a physical alteration to an historic property is not required because of paragraph (a)(2) or (a)(3) of this section, alternative methods of achieving program accessibility include —
 "(i) Using audio-visual materials and devices to depict those portions of an historic property that cannot otherwise be made accessible;
 "(ii) Assigning persons to guide individuals with handicaps into or through portions of historic properties that cannot otherwise be made accessible; or
"(iii) Adopting other innovative methods."[14]
Appropriate federal agencies identified by the United States Department of Justice are responsible for enforcement of Title II of the ADA.[15] Unless specifically provided otherwise, complaints regarding noncompliance by state and local government components may be filed with the United States Department of Justice[16] by any individual who believes that he or she or a specific class of individuals has been subjected to discrimination on the basis of disability by a public entity.[17] Additionally, a private party may file suit in federal court against a public entity that fails to comply with Title II of the ADA.[18]
In 1994, the Kansas Architectural Accessibility Standards Act (KAASA)[19] was amended in an attempt "to harmonize state law with federal law. . . ."[20] The amendments were "intended to prohibit discrimination on the basis of disability by Title II and Title III entities. All facilities covered by [the KAASA] are to be designed, constructed and altered to be readily accessible to and usable by individuals with a disability."[21]
"Except as provided in K.S.A. 58-1307, and amendments thereto, [historic properties], all existing facilities, and the design and construction of all new, additions to and alterations of, facilities in this state shall conform to Title II or Title III [of the ADA], as appropriate. The design and construction of new, addition to or alteration of, any facility which receives a building permit or permit extension after the effective date of this act shall be governed by the provisions of this act."[22]
If the facility is "a qualified historic facility, as defined in section 504(c) of the Americans [with] disabilities act of 1990,"28 C.F.R. § 35.150(b)(2) and 35.150(d) are to be followed when making any alteration of or addition to the facility.[23]
The entity charged with enforcement of the accessibility standards of the KAASA is determined by the type of facility involved. "Facility" is defined in the Act as including "all or any portion of buildings, structures, sites, complexes . . . , roads, walks, passageways, parking lots or other real or personal property, including the site where the building, property, structure or equipment is located."[24]
"The responsibility for enforcement of this act shall be as follows:
. . . .
 "(3) for all existing facilities, and the design and construction of all new, additions to and alterations of, any local government facilities where funds of a county, municipality or other political subdivision are utilized, the governmental entity thereof or an agency thereof designated by the governmental entity. . . ."[25]
The State Attorney General provides oversight of enforcement of the Act.[26]
Therefore, a county attorney's office is required by Kansas and federal law to comply with the accessibility standards established under the ADA. The ADA does not necessarily require that the office itself be physically accessible to individuals with disabilities. In determining whether the office is in compliance with Title II of the ADA, its services, programs and activities must be viewed in their entirety. The office will not be required to make modifications in its services, programs and activities if the modifications would fundamentally alter the services, programs and activities or would result in undue financial and administrative burdens upon the office. In addition, alterations of the physical aspects of the office may not be required if the office is located in an historic site. The ADA is enforced by appropriate federal agencies. In determining compliance with the KAASA, primary enforcement authority with regard to any local government facility where funds of a county are utilized is placed upon the county or an agency designated by the county.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
CJS:JLM:RDS:jm
[1] 42 U.S.C.A. §§ 12101 et seq.
[2] 42 U.S.C.A. § 12131(1)(A); 28 C.F.R. § 35.104.
[3] 42 U.S.C.A. §§ 12131 through 12165.
[4] The county attorney's office may in its employment matters be subject to Title I, 42 U.S.C.A. § 12111 through12117, of the ADA and the Kansas Act Against Discrimination, K.S.A. 44-1001 et seq. Given the general tenor of your request, the obligations under these provisions have not been reviewed in this opinion.
[5] 42 U.S.C.A. § 12132. See also 28 C.F.R. § 35.130(a).
[6] 28 C.F.R. § 35.149 (emphasis added).
[7] 28 C.F.R. § 35.150(a) (emphasis added).
[8] 28 C.F.R. § 35.150(c).
[9] 41 C.F.R. Subpt. 101-19.6, App. A.
[10] 28 C.F.R. Part 36, App. A.
[11] 28 C.F.R. § 35.151.
[12] Id.
[13] 42 U.S.C.A. § 12134(a); Olmstead v. L.C., 527 U.S. 581, 591,
119 S.Ct. 2176, 144 L.Ed.2d 540 (1999).
[14] 28 C.F.R. § 35.150(b) (emphasis added).
[15] 42 U.S.C.A. § 12133. See 28 C.F.R. § 35.170(c);28 C.F.R. § 35.190(b).
[16] 28 C.F.R. § 35.190(b)(6).
[17] 28 C.F.R. § 35.170(a).
[18] 28 C.F.R. § 35.178. But see Board of Regents of Univ. ofAlabama v. Garrett, 531 U.S. ___, 121 S.Ct. 955, 148 L.Ed.2d 866
(2001) (states are the beneficiaries of the Eleventh Amendment and, therefore, are not subject to allegations of noncompliance with Title I of the ADA filed in federal court; such immunity does not extend to local units of government); Goldbarth v. KansasState Bd. of Regents, 269 Kan. 881, 894 (2000) (the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting states to private suits for damages in state courts).
[19] K.S.A. 58-1301 et seq.
[20] Link, Inc. v. City of Hays (Link I), 266 Kan. 648, 655 (1999).
[21] K.S.A. 58-1303.
[22] K.S.A. 58-1301.
[23] K.S.A. 58-1307.
[24] K.S.A. 58-1301b.
[25] K.S.A. 58-1304(a).
[26] K.S.A. 58-1304(b). See Link I, 266 Kan. at 652-53.