NO. 81,620

LINK, INC., LOU ANN KIBBEE, AND BRIAN ATWELL, *Appellees,*
v. CITY OF HAYS, KANSAS, *Appellant.*

(997 P.2d 697)

Opinion filed January 28, 2000.

*John T. Bird,* of Glassman, Bird & Braun, L.L.P., of Hays, argued the cause and was on the brief for appellant.

*David P. Calvert,* of David P. Calvert, P.A., of Wichita, argued the cause, and *James L. Germer,* of Kansas Advocacy and Protective Service, Inc., of Topeka, was with him on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: In this mandamus case, we revisit enforcement issues under the Americans with Disabilities Act (ADA) accessibility standards. See *Link, Inc. v. City of Hays,* 266 Kan. 648, 972 P.2d 753 (1999) *(Link I.)* The parties in *Link I* are again before us. The district court issued a writ directing the City of Hays (the City) to enforce K.S.A. 58-1304(a)(4) of the ADA. The district court also awarded attorney fees to plaintiffs. The City appeals.

*Link I* and this case involve the interpretation of K.S.A. 58-1304(a).

*Link I* concerned ADA accessibility standards for existing Title III public accommodations and commercial facilities built without municipal funds. We decided that K.S.A. 58-1304(a)(3) was ambiguous and reversed the district court. We held that the City had no K.S.A. 58-1304(a)(3) enforcement duty. *Link I,* 266 Kan. at 655, 657. *Link I* deals with paragraph (3) of 58-1304(a). Here, we are dealing with paragraph (4) of 58-1304(a). We are reviewing the grant of a writ directing the City to enforce the ADA in the design and construction of all new and all additions to and alterations of facilities subject to K.S.A. 58-1301 *et seq.* (both public and private).

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our own motion).

The two issues for resolution are:

(1) Did the district court err in deciding that: (a) the City has not enforced K.S.A. 58-1304(a)(4) when issuing building permits, and (b) the City's refusal to perform its duty of enforcement was unreasonable; and (2) Was a $300 per hour attorney fee award reasonable?

We affirm the writ of mandamus and the award of attorney fees.

## DISCUSSION

The mandamus action was filed by two wheelchair users, Lou Ann Kibbee and Brian Atwell, and Link, Inc., a nonprofit corporation and center for independent living (collectively Link). Link argued that the City failed to comply with its statutory duties under K.S.A. 58-1301 *et seq.* (the federal ADA of 1990, 42 U.S.C. § 12101 *et seq.* [1994], is incorporated into Kansas statutes). The district court issued two writs of mandamus in response to the litigation. We vacated the first writ in *Link I.*

Here, we are concerned with a writ which directs the City to enforce ADA accessibility requirements under K.S.A. 58-1304(a)(4). "Paragraph (4) deals with new construction, placing enforcement on 'the building inspector or other agency or person designated by the governmental entity in which the facility is located.' " *Link I,* 266 Kan. at 651.

The City concedes that the duty to enforce exists. Thus, the issue is not whether a duty to enforce exists, but whether that duty is

being performed by the City and, if not, whether the failure to perform is unreasonable.

Link argues that the City has not met its K.S.A. 58-1304(a)(4) enforcement responsibilities. Local governments are responsible for enforcing the ADA through building inspectors or other designated officials. Building inspectors can assure compliance by issuing or denying building permits. According to Link, the City does nothing to ensure that new structures comply with the ADA before issuing either building permits or certificates of occupancy. Link also argued that the City's failure to enforce K.S.A. 58-1304(a)(4) was unreasonable and urged the district court to award it attorney fees under K.S.A. 60-802(c).

The City contends that it enforced the ADA through a cooperative partnership with Link. The City admits that it had no formal contract with Link. However, the City claims "the two entities established a working relationship whereby Link would review all building plans, do site inspections, and act as a consultant to the City on ADA issues."

Following a bench trial, the district court found that the City had no mechanism in place for enforcing the ADA under K.S.A. 58-1304(a)(4). The district court directed the City to establish procedures for enforcing K.S.A. 58-1304(a)(4). The court said: "It is clear from the evidence presented at trial that the attitude of the City of Hays, while not overtly hostile to the concept of enforcement of accessibility standards, reflects an attitude of benign indifference to [its] statutory duty." The district court held:

"A. The City of Hays is ordered to enforce K.S.A. § 58-1304(a)(4), specifically including those entities set forth in the Pretrial Conference Order. The City may, in its discretion, utilize any reasonable enforcement tools necessary to assure compliance.

"B. The City of Hays will develop procedures designed to raise the issue of accessibility prior to the granting [of] a permit.

"C. The City of Hays will develop procedures for determining if efforts at compliance are sufficient in a particular case, including obtaining advisory opinions from agencies such as DBTAC, U.S. Architectural and Transportation Barriers Compliance Board, U.S. Dept. of Justice, or independent living centers.

"D. The City of Hays will develop procedures for notice and opportunity to be heard for persons found not in compliance.

"E.   The City of Hays will develop procedures for acting upon complaints of noncompliance."

The district court also ruled that Link was entitled to reasonable attorney fees. K.S.A. 60-802(c) authorizes an award of attorney fees in mandamus actions on a finding that refusal to perform a duty was unreasonable. See *Barten v. Turkey Creek Watershed Joint District No. 32,* 200 Kan. 489, Syl. ¶ 5, 438 P.2d 732 (1968). The district court concluded that the City's duty was clear and there was no reasonable justification for the City's failure to enforce K.S.A. 58-1304(a)(4). After a hearing, the district court set the amount of attorney fees at $300 per hour for a total of 161.4 hours.

## Mandamus

A mandamus proceeding is defined by K.S.A. 60-801 as

"a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

The City suggests that the district court was without authority to issue the writ because the manner in which the City chooses to enforce the ADA is entirely within its own discretion. The City relies on *Arney v. Director, Kansas State Penitentiary,* 234 Kan. 257, 671 P.2d 559 (1983). Arney, a prison inmate, sought mandamus to compel a penitentiary director to allow a television crew to visit and tape him. The district court granted the writ. We reversed, holding that mandamus is available only for the purpose of compelling the performance of a clearly defined duty. 234 Kan. 257, Syl. ¶ 2. Mandamus may not be invoked to control discretion. Mandamus does not enforce a right that is in substantial dispute. A party must be clearly entitled to the order sought before mandamus is proper. *Lauber v. Firemen's Relief Assn. of Salina,* 195 Kan. 126, 128-29, 402 P.2d 817 (1965). The prison director in *Arney* had no statutory or other clearly defined duty to allow a prisoner to be visited by a television crew. The decision was purely discretionary. As a result, the visit could not be compelled through mandamus.

The City contends that the district court's writ here violates the long-established rule that mandamus may not be used to control

discretion. The initial question is whether the writ dictates how the City must enforce the ADA under K.S.A. 58-1304(a)(4). The answer is "no."

Mandamus was proper here because the district court ruled Link had alleged the City was not discharging its duty under K.S.A. 58-1304(a)(4) *at all*. The City's characterization of this case is misleading. The question in the district court below was whether the City was enforcing the ADA as it is required to do under K.S.A. 58-1304(a)(4). The parties stipulated that the City has a duty to enforce K.S.A. 58-1304(a)(4). Thus, unlike *Arney*, there is a clearly defined statutory duty at issue. The only question is the one litigated below: Was the City discharging that duty? The City's "discretionary" argument fails. Therefore, the City must show, contrary to the district court's findings, that it was in some way discharging its 58-1304(a)(4) statutory duty. The City contends the record shows that it has done so. We disagree.

### K.S.A. 58-1304(a)(4) Enforcement—the City's Position

The City: (1) argues it has neither refused nor failed to enforce the ADA, (2) contends the evidence showed it in fact made efforts to comply with the ADA through "a working relationship with [Link]," (3) cites a few examples of testimony that arguably supports its position, (4) claims that it was enforcing the ADA accessibility standards through this working relationship when Link ended the relationship for no apparent reason, and (5) characterizes Link's position as "nothing more than [an allegation] that the City of Hays did not enforce the ADA because [it] did through a third party what [it] could have done personally."

The City contends that it instructed Wayne Schwartz, the building inspector, to take responsibility for ensuring ADA compliance through its permit process. According to the City, Schwartz, a former fire chief, was told to educate himself in ADA and ADAAG (Americans with Disabilities Act Accessibility Guidelines) compliance. Schwartz allegedly directed his assistant, Ron Michaelsen, to investigate ADA complaints. The City also allegedly trained three employees in ADA enforcement. The district court did not view

the relationship between Link and the City as the City characterizes it.

### The Standard of Review

Under our standard of review, we do not examine the record for "some" evidence supporting the City's position. We review the record for substantial competent evidence supporting the district court's findings of fact. See *Reimer v. The Waldinger Corp.*, 265 Kan. 212, 214, 959 P.2d 914 (1998). We must decide whether the district court's findings of fact are supported by substantial competent evidence and whether they are sufficient to support the district court's conclusions of law. See *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993). We believe they were.

### The District Court's Findings

The district court's factual findings included:

"5.    Under K.S.A. § 58-1304(4), responsibility for enforcement of accessibility standards in new construction, additions to old construction, and alterations or remodeling of old construction lies with the building inspector or other person or agency designated by the pertinent government entity. In the case of the City of Hays, this responsibility has been given to Chief Schwartz. The City does not deny that it bears this responsibility.

"6.    The architectural standards for compliance with the ADA and supporting regulations, which in turn are incorporated into the Kansas act, are set out in the government publication 'Americans with Disabilities Act Accessibility Guidelines,' which is usually condensed to its acronym, 'ADAAG.'

"7.    In the past, LINK, Inc., has provided technical assistance concerning building accessibility to both private businesses and to the City of Hays. In addition, LINK, Inc., has encouraged businesses that it found had made a good effort at compliance through "certificates of recognition."

"8.    Plaintiffs enumerated several businesses in the City of Hays that qualified as new, additions to old, and remodeled facilities, where the construction was not done in compliance with ADAAG requirements. In some cases, the problem was corrected. In other instances, a modification was made in an attempt to comply, but the end result still did not meet standards. In others, there was a disagreement over interpretation of the standards and hence whether the building was not in compliance. In still other cases, the problem cited has remained acknowledged, unabated, and unmodified. In all instances, the issue was brought to the attention of the City of Hays by Plaintiffs. The City responded by writing or visiting the business. For a business that refused to comply, the City mentioned the possibility of revoking the certificate of occupancy.

"9. The City of Hays has established no mechanism or procedure for screening building plans for accessibility prior to granting the permit to build.

"10. The City of Hays has established no definite mechanism or procedure for determining if new construction complies with the standards, other than by informally responding *ad hoc* to specific complaints.

"11. The City of Hays has promulgated no rules concerning the enforcement of the required standards.

"12. The City of Hays has not established a due process procedure for individual businesses to appeal determinations made concerning accessibility standards, or to seek variances or exceptions as under the ADA.

"13. The City of Hays has presented no evidence of future plans regarding enforcement of accessibility standards, other than a continuation of the status quo.

"14. The Kansas statute incorporating the ADA standards and creating the duties of enforcement for the City of Hays has been in effect since July 1, 1994.

"15. The City of Hays has failed to adequately perform on its statutory obligations with regard to Title III, new, additions to, and renovations to buildings within the City, and under all the circumstances this failure is not reasonable."

## Our Analysis of the Record

The City takes issue with the district court's finding that it never established any mechanism or procedure for ensuring that new Title III construction complied with the ADA.

The record does not support the City's representation of the testimony. Few of the City's citations to the record bear out the factual assertions in its brief. What the City terms a "working relationship" was actually a systematic effort by Link to engage the City in ADA compliance issues.

Robbin Tropper, a Link employee, agreed that the City permitted Link to be involved in reviewing plans for ADA compliance. This involvement was not at the invitation of the City, but by Link's own initiative. The record clearly shows that the City would be made aware of ADA violations only through complaints by Link or members of the community. Link employed people like Robin Tropper and John Bollig to investigate complaints. Concerned about accessibility in Hays, Link sent its employees to investigate local businesses. Link also monitored new construction by sending its employees to the Chamber of Commerce planning room. Bollig investigated complaints and plans for new construction at Link's request and then took up accessibility questions with Kent Laas or Michaelsen (City officials). Bollig did not characterize the relation-

ship between the City and Link as the City does in its brief. Contrary to the City's assertions, Bollig's testimony does not support the City's position.

The evidence at the bench trial supports the district court's findings. The enforcement duty in question came into existence in 1994 when the ADA was incorporated into K.S.A. 58-1301 *et seq*. (For ADA background, see *Link I*, 266 Kan. at 649.) In 1994, Kent Laas was the City's building inspector. Laas testified that he understood he had a responsibility as the City's building inspector to enforce the ADA. He admitted, however, "[W]e relied on the architects to submit plans that complied with the ADA." Laas further admitted that he did nothing to make sure that plans submitted by architects complied with the ADA. When Laas received notice from Link that an aspect of a new construction project did not comply with accessibility standards, he did nothing. He stated he relied on the architects to submit plans that complied with the ADA because, in his understanding, architects are required to do so by law.

Ron Michaelsen gave similar testimony. When Laas left his position, the City instructed its new director of Fire and Inspection Services, Wayne Schwartz, to assume the duties of ADA enforcement. Michaelsen worked at the direction of Schwartz. Michaelsen, a certified building inspector, testified that he took over the ADA enforcement responsibilities after Laas left. Michaelsen responded to at least four specific complaints about accessibility in certain buildings. His response was limited to sending a letter about the alleged problem to the business. He admitted never following up on the complaints because " [he] was not instructed to follow up on it." Michaelsen also admitted: (1) There was no other person working for the City with ADA knowledge superior to his, (2) he was not an ADA expert, and (3) he had not been trained in ADA compliance. Overall, Michaelsen, like Laas, relied on the architects who submitted plans. Michaelsen testified: "I rely on the architect because he is certifying—it's his license and his stamp also that's —that he's certifying—you know, it's on the line for him too." Michaelsen admitted he was not trained in reviewing an architect's plans.

The district court observed:

"Unless the Plaintiffs or someone else specifically complained about a deficiency, the issue [of accessibility compliance] would never come up. There is no way that a deficiency would come to the attention of the city except in this manner. There is no mechanism for checking on compliance before permits are issued or for routine inspections for accessibility compliance during or after construction."

Overall, the district court's conclusions are correct and supported by the evidence. Although the City contends it "engaged [Link] to review plans and site inspections," the City does not appear to have engaged Link to do anything. The City merely followed up on complaints made by Link and sometimes told business owners to work out any accessibility problems raised by Link with Link.

The record lacks evidence showing the City itself took responsibility for enforcing the ADA under K.S.A. 58-1304(a)(4). We find no suggestion in the record that the City ever investigated or found an alleged violation of the ADA accessibility standards of its own volition. There is substantial competent evidence to support the district court's findings of fact. These findings of fact, in turn, are sufficient to support the district court's conclusions of law, including the conclusion that the City's refusal to perform its duty of enforcement was unreasonable.

The City also takes issue with the district court's refusal to make specific findings as to the ADA violations alleged in the pretrial order. (The alleged ADA violations named specific business locations and described the violation.) The district court found it unnecessary to do so because the record contained "abundant evidence . . . that the City has failed to properly enforce the accessibility standards." Moreover, the district court observed that the alleged violators (local businesses) were not parties to the lawsuit; thus, a judicial finding of noncompliance would not be appropriate. We agree.

Finding specific violations was not necessary here because Link was not seeking a judicial declaration of noncompliance by business owners. The purpose of the pretrial order allegations was to show that the City issued building permits and certificates of occupancy without first making sure that the building plans complied with ADA accessibility standards.

The City spends much time in its brief taking issue with many alleged violations. It contends that "the alleged violations existing at the time of the issuance of the Certificate of Occupancy were either minor violations that did not deny access, or were subject to reasonable interpretation, or have since been corrected." We question this assertion. Schwartz agreed that many of the violations alleged in the pretrial order were correct, including violations at the Comfort Inn, Boone's TV & Appliance, Carlos O'Kelly's, Casey's General Store, Horizon Appliance, Taco Bell, and many others. Schwartz claimed that *some* of the pretrial order violations were remedied. While Schwartz took issue with many of the alleged violations, he agreed that most of them existed.

### Link's Attorney Fee Award

In its brief the City observes: "Although the City can see that attorneys fees might be awarded, provided that Plaintiffs prevail on appeal, the amount of attorneys fees awarded should be reasonable." The objection targets the reasonableness of the district court's attorney fee award to Link. K.S.A. 60-802(c) authorizes an award of attorney fees as damages in a mandamus action when the refusal to perform a duty is unreasonable. *Barten*, 200 Kan. 489, Syl. ¶ 5. The district court found that the City had no reasonable basis for failing to enforce K.S.A. 58-1304(a)(4). The amount of an attorney fee award is within the sound discretion of the district court and will not be disturbed on appeal absent a showing that the district court abused that discretion. *Sheila A. v. Whiteman*, 259 Kan. 549, Syl. ¶ 9, 913 P.2d 181 (1996).

Link introduced several exhibits and testimony from attorney Gerald W. Scott at the attorney fee hearing. The exhibits included time records, fee agreements, and a memorandum of law on attorney fee awards prepared by Scott. The City presented no evidence. Counsel for the City argued to the district court that the customary rate for attorneys in Northwest Kansas was $100 to $125 per hour.

The district court found that a fee of $300 per hour for 161.4 hours of work (a total of $48,420) was a reasonable fee for this case. The City claims the award is "grossly excessive." Citing *Tyler v.*

*City of Manhattan*, 866 F. Supp. 500 (D. Kan. 1994), the City argues that an appropriate fee is in the range of $90 to $125. *Tyler* involved a suit under the ADA; however, the issues are not disclosed in the opinion.

The City also argues that it was not necessary to submit evidence on attorney fees because the district court is required to use its own expertise in the area. The City asserts: "[F]or the district court to grant the $300 per hour attorneys' fees because the City presented no evidence is to ignore its own duty to exercise its expert opinion in the area." (Citing *Buchanan v. Employers Mutual Liability Ins. Co.*, 201 Kan. 666, 443 P.2d 681 [1968].) Abuse of discretion, according to the City, is found in the district court's refusal to use its own expertise.

The City's argument lacks merit. While the district court is considered an expert on the issue of attorney fees, *City of Wichita v. B G Products Inc.*, 252 Kan. 367, 372-73, 845 P.2d 649 (1993), the City cites no case placing a *duty* on the district court to disregard the evidence and use its "expertise" as a controlling element in an award determination. In *BG Products* we said: "'The trial court itself is an expert in the area of attorneys' fees and *can* draw on and apply its own knowledge and expertise in evaluating their worth.'" (Emphasis added.) 252 Kan. at 372 (quoting *Buchanan v. Employers Mutual Liberty Ins. Co.*, 201 Kan. 666, Syl. ¶ 9, 443 P.2d 681 [1968].) The district court observed that Link

"introduced four exhibits. Exhibits 1 through 3 consist of time records, a fee agreement, and a co-counsel agreement between Kansas Advocacy and Protective Services, Inc. and David Calvert. The fourth exhibit consists of a looseleaf binder containing a thorough brief of the issue by Mr. Scott, including extensive references to pertinent case law and other authority. It is also notable that David Calvert was assisted at trial by Jim Germer, an attorney for K.A.P.S, who has not requested a fee."

By approving the fee, the district court has inferentially applied its own view as to reasonableness. Such an inference is inherent in the award. The City must show that no reasonable person would agree with the district court's decision. This, the City cannot do.

In *BG Products,* we upheld an attorney fee of $300 per hour for 410 hours. This award of $123,000 was based on hourly fees alone;

costs were also awarded. *BG Products* was a condemnation case. We noted the testimony that the attorney involved was an acknowledged expert in the field of eminent domain and had obtained outstanding results for his client. 252 Kan. at 375. As in *B G Products*, there was testimony here that Link's attorney is a recognized expert.

*BG Products* also held that the eight factors set forth in Rule 1.5 (1999 Kan. Ct. R. Annot. 312) of the Kansas Rules of Professional Conduct should be considered in deciding the reasonableness of an attorney fee. 252 Kan. at 374. Scott testified on the Rule 1.5 factors.

The district court relied on competent evidence. Appellate courts are also experts on the reasonableness of attorney fees. However, we do not substitute our judgment for that of the district court on the amount of the fee unless "in the interest of justice" we disagree with the district court. *Buchanan,* 201 Kan. 666, Syl. ¶ 9-11. The interests of justice do not compel us to disagree with the district court. We find no abuse of discretion here.

Affirmed.