NOT DESIGNATED FOR PUBLICATION

No. 121,875

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

KRISTEN RAY,
*Appellant*,

and

JASON FELLERS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed September 4, 2020. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

No appearance by appellee.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

PER CURIAM: When judges are asked to make difficult decisions concerning the placement of children, they often seek the sound counsel of attorneys appointed to represent the best interests of the children. These specially trained lawyers speak for the children in court and not for the conflicting parents who are adversaries in often heated litigation. These independent attorneys are known as guardians ad litem. Frequently, the judge divides the fees and expenses of the guardian ad litem between the parents. That occurred in this case.

1

Kristen Ray, the mother of E.F., appeals the trial court's order holding her responsible for one-half of the guardian ad litem's fees and expenses here. She argues that the court did not consider her limited means when assessing the fees. Ray also contends that the guardian ad litem's fees were unreasonable because the attorney did not do a good job and violated the standards in Supreme Court Rule 110A (2020 Kan. S. Ct. R. 178). Jason Fellers, the father of E.F., did not favor us with a brief.

Because we review this question for an abuse of discretion, our review of the record does not lead us to hold that the trial court was unreasonable in assessing half of the fees to mother. We affirm.

*Mother and father separate and divorce.*

Ray filed for divorce from Fellers in September 2017. A month later, Fellers moved to appoint a guardian ad litem for three-year-old E.F., asserting Ray and he had "diametrically opposed positions relating to child custody and whom the residential parent should be." He asked the court to split the costs evenly between the parties.

Ray objected to the appointment, saying that she could not afford a guardian ad litem and that E.F.'s age would make any interview difficult. The judge appointed a guardian ad litem over her objection and assessed the total fee and expenses to Feller, but retained jurisdiction to adjust the fee responsibilities until the conclusion of the proceedings.

The judge appointed Catherine Craft as the guardian ad litem. Craft completed her investigation and submitted a 16-page report in early March 2018 just after E.F. had turned four. Craft interviewed nine people: Ray; Fellers; E.F.'s counselor; a state social worker who was investigating allegations against Fellers; three staff members at E.F.'s preschool; and Ray's mental health counselor.

2

The report suggested that 14 of the 18 factors relevant to decisions about child custody in K.S.A. 2019 Supp. 23-3203(a) were important to this case and analyzed those factors in detail. The report then made seven recommendations:

(1) The parents should have joint custody of E.F.;

(2) Ray should be the residential parent and Fellers should have parenting time;

(3) E.F. should remain living in Salina;

(4) the parents should try to agree on holiday parenting time;

(5) E.F. should continue counseling;

(6) the parents should seek individual therapy; and

(7) the parents should participate in a coparenting class.

Eventually, the court granted a divorce and reserved ruling on the division of assets and child custody issues. Through mediation, Ray and Fellers reached an agreement on a permanent parenting plan. But when Ray later mailed notice to Fellers of her intent to relocate with E.F. to either Lawrence or Tulsa, Fellers objected. He maintained that the move would constitute a material change in circumstance, allowing the trial court to modify the parenting plan. So they went back to court.

The court eventually held a three-day trial on Ray's request to move. Before that trial, Fellers asked the court to assess some of Craft's fees against Ray. He advised that those fees had accrued to $6,144 since the court had appointed Craft and he had paid $4,978, while Ray had paid nothing. He asked the court to assess to Ray 50 percent of the fees that had accrued before Ray's notice of intent to move, and 100 percent of the fees that had accrued since then. The court did not rule on the guardian ad litem's fees until well after the trial.

Ultimately, the court denied Ray's motion to move. This ruling and several other issues were appealed, and a panel of this court affirmed the trial court. See *In the Matter*

3

*of Marriage of Ray and Fellers*, No. 121,011, 2020 WL 2502234 (Kan. App. 2020) (unpublished opinion). But here, we confine our review to the issue of the guardian ad litem's fees.

By the end of April 2019, Craft had received no payments from Ray. She asked the trial court to approve her fees and grant judgment against Ray for $5,752, which was 50 percent of her fees and expenses. As statutory authority for her request, Craft cited K.S.A. 2019 Supp. 23-2715, which says that "[c]osts and attorney fees may be awarded to either party as justice and equity require."

When the court heard the matter, Craft stated that both Ray's and Feller's attorneys had told her that the court had ordered a 50-50 fee split, but she could not find a journal entry stating that. She said that she had detailed billing statements showing the work that she did, the time that she charged, and the hourly rate. She also said that she had provided those statements to Ray's lawyer. Craft then submitted those documents to the court, but she did not introduce them as exhibits, so they are not in the record on appeal.

Ray testified that she objected to the amount Craft had requested. She said that she thought a guardian ad litem was unnecessary and she did not want to pay what Craft had requested because her work was irregular. She also asserted that Craft had not done enough work because she had met with E.F. only once. She did not meet with Ray and Fellers when Ray had asked her to. And Craft did not contact some people that Ray had wanted her to talk to. In Ray's view, Craft participated little at trial. Ray acknowledged that Craft became more involved as the case proceeded, but she also disagreed with some of Craft's recommendation about parenting time.

The trial court reiterated that guardian ad litem fees would be split 50-50 and granted judgment to Craft for the full amount and, if necessary, collection fees. The court acknowledged that it had initially assessed 100 percent of the fees against Fellers, but that

4

was because Ray had objected to the appointment of a guardian ad litem and the court had wanted to move things along. The court said it had reviewed Craft's billing statements and found the fees were related to the work that was involved. The court disagreed with Ray that a guardian ad litem had been unnecessary. The judge said that after listening to the trial, the record fully supported the appointment. Finally, he explained that given E.F.'s age, spending a lot of time with him probably would not have been very useful and that Craft's limited questioning at trial may have just meant that the parties' attorneys were thorough—it did not mean that Craft did not fully participate.

*Our analysis*

Ray attacks the court's holding on two fronts. First, she objects to the trial court's decision to assess her fees at all. But then, she also challenges the amount of fees that the court assessed. We address the arguments separately.

Kansas courts can award attorney fees only if a statute authorizes them or the parties agree to allow them. Craft cited K.S.A. 2019 Supp. 23-2715 in her motion for judgment against Ray, which allows a court to award costs and attorney fees "to either party as justice and equity require." Ray has not suggested on appeal that the trial court lacked authority to grant attorney fees to Craft.

We review the decision to award fees and the amount of fees awarded for an abuse of discretion. A trial court abuses its discretion if it bases its decision on a legal or factual error, or if no reasonable person would agree with the decision. *Thoroughbred Assoc. v. Kansas City Royalty Co.,* 58 Kan. App. 2d 306, 332, 2020 WL 3481512, at *17 (2020).

On the first issue, Ray argues that the court did not consider whether assessing fees to her was equitable. She cites no legal authority for the idea that a court must consider equity when awarding fees, but presumably she is referring to the "as justice and

5

equity require" language of K.S.A. 2019 Supp. 23-2715. She argues that the court should have considered that she objected to the appointment of a guardian ad litem, worked only part time as a nurse, and had a health condition. She had back surgery in April 2017.

But there is nothing in this record that suggests the court did not consider these factors. Ray made sure that the court was aware of them. That Ray objected to the appointment is not relevant since she has not appealed the appointment of a guardian ad litem. The court found that it was necessary to represent E.F.'s interests.

Without a legal or factual mistake—which Ray does not claim—a trial court abuses its discretion only when no reasonable person could agree with its decision. See *Thoroughbred Assoc.*, 58 Kan. App. 2d at 332. A reasonable person could still agree with the court's decision to assess half of the fees to Ray. We are mindful that Fellers had asked the court to assess all of Craft's fees to Ray because she filed the motion to move, which took 3 days to try. And, in fact, the trial court denied her request.

We turn now to the question about the amount of the fees. Ray makes two arguments.

Ray contends that Craft violated Rule 110A, which sets out standards for a guardian ad litem. That rule requires the guardian ad litem to conduct an independent investigation and review all relevant documents, have ongoing contact with the child, and represent the best interests of the child at all hearings. It also requires the guardian to vigorously advocate for the child's best interests and explain the court proceedings and the guardian ad litem's role to the child in terms the child can understand. See Rule 110A(c)(1), (c)(3)(B) and (E), (c)(4).

Ray asserts that Craft violated that Rule by:

- Failing to explain the court proceedings to E.F. in terms he could understand;
- meeting with E.F. only once; and
- failing to ask questions or call witnesses during the trial.

Even though Ray did not raise this issue with the trial court, when we look at it closely, it is not persuasive.

Nothing in the record suggests that Craft explained the trial to E.F. in terms he could understand. But E.F. was three years old when Craft was appointed—it is doubtful that E.F. would have been able to understand such an explanation.

Ray's complaint that Craft had failed to participate at trial is contradicted by the record. While Craft did not call any witnesses at the trial, she had interviewed nine people and questioned six witnesses during the trial. For example, Craft asked Fellers about an incident where E.F. had been exposed to bug spray and Fellers had not washed it off because he was under time constraints to return E.F. to Ray. Craft asked E.F.'s therapist about Ray and Fellers saying inappropriate things about each other in front of E.F. She asked a clinical social worker about Ray, who had been seeing her for diagnosed general anxiety disorder. She asked Ray's sister, a family therapist, about E.F.'s behavioral problems. She asked the marriage and family therapist about Ray's and Feller's fitness to care for E.F. And she asked Ray about her proposed parenting plan if the court allowed Ray to move.

Craft also gave a closing statement where she reiterated and expanded on the analysis and recommendations that she had made in her report. Craft was more engaged with the trial than Ray suggests. Besides, Craft had no burden to prove anything but to speak and ask about the best interests of E.F. This record shows Craft's important and active participation in this case.

Even though a single meeting between Craft and E.F. does not count as ongoing contact with the child, given that E.F. was between three and four years old at the time, it is not clear that more contact with E.F. would have influenced Craft's conclusions about E.F.'s best interests. We read this record to show diligence and skill by Craft.

We come now to Ray's final point. She argues that, while it is her burden to designate a sufficient record on appeal, Craft did not introduce sufficient evidence at the fee award hearing for the court to grant relief. In her view, the $5,752 fee award is not supported by substantial evidence, because the only evidence at the hearing was Ray's testimony opposing the fee award. See *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 973, 255 P.3d 34 (2011) (stating that an award of attorney fees will not be set aside on appeal when supported by substantial competent evidence).

Craft did not introduce her billing statements as exhibits—she simply submitted them to the court, and the court concluded that "the fees appear to be actually related to the work that was involved."

This argument raised by Ray is no reason to reverse this award. A trial court is considered an expert on attorney fees and therefore may apply its own knowledge and professional experience in determining the value of the services rendered. And "[b]y approving the fee, the district court has inferentially applied its own view as to reasonableness. Such an inference is inherent in the award." *Link, Inc. v. City of Hays*, 268 Kan. 372, 382, 997 P.2d 697 (2000).

Based on this record and our standard of review, the trial court did not abuse its discretion in awarding fees of $5,752 to Craft.

Affirmed.