NOT DESIGNATED FOR PUBLICATION

No. 123,464

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRYCE LOYD and KAYSI LOYD,
*Appellants*,

v.

RURAL WATER DISTRICT NO. 2, JEFFERSON COUNTY, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed February 25, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, and *Joel E. Cape*, pro hac vice, of Cape Law Firm, PLC, of Fayetteville, Arkansas, for appellants.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Roy and Mary Jo Seetin split their property, which contained two water benefit units, into two parcels and sold the parcels to different buyers. The first buyers, Bryce and Kaysi Loyd believed that they were entitled to both water benefit units when the sale was completed. But when the second parcel was purchased from the Seetins, Rural Water District No. 2 (RWD) planned on moving the second water benefit unit to the second buyer.

1

The Loyds sued the Seetins and RWD. Eventually, the Seetins were removed from the case and settlement negotiations between the Loyds and the Seetins occurred. But RWD remained a party to the suit. The Loyds amended their petition and sought a writ of mandamus against RWD. RWD made an offer of judgment to the Loyds, which the Loyds accepted. The offer of judgment did not make any mention of costs or attorney fees.

The Loyds moved for costs and attorney fees, arguing that because they were the prevailing party on the suit, they were entitled to their costs and attorney fees. The trial court disagreed and denied the motion. As between the entitlement to costs and attorney fees in this appeal, we conclude that the Loyds' argument for costs is persuasive. Nevertheless, we conclude that the Loyds' argument for attorney fees is fatally flawed. Thus, we affirm in part, reverse in part, and remand with directions to award costs to the Loyds as the prevailing party in the below action.

FACTS

In 2018, the Seetins were selling their farm (the Farm) and the Loyds were interested in buying it. The Farm was around 40 acres and contained a typical home, a rental mobile home, and outbuildings. Before closing, Charlie Bowen, a technician with RWD met with the Seetins' real estate agent and explained that the property had two water benefit units, one of which serviced the main residence and the other which serviced the mobile home. Bowen explained to the real estate agent that RWD bylaws required one benefit unit per residence or business, thus the meter located with the mobile home would be moved and sold with that property.

The Loyds agreed to assume the mobile home lease with modifications and required the tenants to quit the lease at the end of the lease term.

Closing occurred in July 2018. The Seetins conveyed the Farm to the Loyds by warranty deed, which contained no reservations of fixtures, minerals, water rights, water meters, water lines, or rural water district benefit units.

The Loyds moved into the Farm and transferred the utilities into their name. They began to receive water bills from RWD. Shortly after the Loyds moved to the Farm, the Seetins sold an adjoining 50-acre tract to Ralph and Linda Moore.

In September 2018, Bryce Loyd met with the Moores who told Bryce that RWD discussed moving the Farm's second water meter at its last board meeting. Bryce attended the October board meeting and learned that "one or more of the Farm's meters was to be relocated to the adjacent tract purchased by the Moores." The board suggested that Bryce contact the Moores' real estate agent to investigate who owned the Farm's second water meter.

The Moores then attempted to purchase the Loyds' second water meter but Bryce declined the offer.

At the November board meeting, Bryce attempted to confirm his ownership of both the Farm's water benefit units and objected to any plan to remove one of the Farm's water meters. The board stated that it would freeze one of the accounts until further information was available.

In January 2018, the Loyds received a letter from RWD which stated that ownership of the meter at issue was resolved. Attached to the letter was a statement from the Seetins which explained the Seetins' intent when they sold the Farm to the Loyds:

> "We, Roy G. and Mary Jo Seetin, do hereby state that when selling our property, on
> which there were two water meters, it was our intent, that one water meter was to go with

the parcel that included the House, Outbuildings, and 40 +/- acres and one meter would go with the 50 +/- acre parcel that adjoins the above stated 40 +/- parcel to the west. "The possibility of this being done was confirmed with the water district thru their Field Maintance [*sic*] manager and was of great Influence in us granting a blanket easement to the water district across the entire farm."

Thus, according to the letter, the Farm's second meter was owned by the Moores.

The Loyds filed a lawsuit against the Seetins and RWD in March 2019. Their lawsuit claimed that the Seetins had breached the real estate contract between them and that the Seetins had made fraudulent or negligent representations to them. The Loyds also asked the trial court to compel RWD to allow them to inspect its books, records, and papers. Within its prayers for relief, the Loyds requested costs and attorney fees.

The Loyds served their initial summons for RWD on the Kansas Secretary of State because RWD had no registered agent for service of process. A second summons was issued to the board chairman of RWD in May 2019. In late June 2019, RWD filed a pro se letter with several exhibits attached.

In the meantime, Bryce Loyd and the Seetins were discussing settlement options. Beginning in April 2019, Bryce agreed to several extensions of time for the Seetins to respond to their lawsuit.

In early July 2019, RWD filed another pro se letter and included an exhibit which stated that RWD "agreed and voted to allow Bryce Loyd to begin ownership of the 2nd meter."

Ten days later, the Seetins moved to dismiss the lawsuit based on a mediation condition contained in their real estate contract with the Loyds.

4

At an October 2019 hearing, RWD was not represented by counsel. Yet, an employee with RWD was present in the gallery. The attorney for the Seetins noted that RWD had already decided to give the Loyds the second water meter. Recognizing that, the trial court questioned what the Seetins had to do with the case at that point. And so, the trial court granted the Seetins' motion to dismiss but allowed the suit against RWD to continue. As to RWD, counsel for the Loyds noted that if they could "record something into the record that says [the Loyds] own two benefit units" they would be happy. The trial court suggested that the Loyds could move for a default judgment against RWD, which would result in a certificate being issued.

Instead, the Loyds filed an amended lawsuit in January 2020. In their amended action, they removed the Seetins and the counts related to them and added claims for declaratory relief and a writ of mandamus against RWD. In their prayer for relief, the Loyds sought a declaratory judgment affirming that the Farm had two water benefit units, a writ of mandamus compelling RWD to issue numbered water benefit units to the Farm, an order compelling RWD to allow the Loyds to inspect the books, records, and papers of RWD, and attorney fees and costs for the lawsuit.

RWD, through counsel, answered the amended lawsuit. RWD, in essence, took the position that transferring the property and the water benefit units were transactions that should have occurred between the Loyds and the Seetins.

RWD then made an offer of judgment to the Loyds, which, in relevant part, stated:

"1. The Plaintiffs will be granted judgment against the Defendant on Count I of their Petition, affirming that the Plaintiff's real property was entitled to two Benefit Units which followed the land when said property was purchased by the Plaintiffs.

"2. The Plaintiffs will be granted judgment against the Defendant on Count II of their Petition, and Rural Water District No. 2, Jefferson County, Kansas will issue

5

consecutively numbered Benefit Unit Certificates to the Plaintiffs for the Benefit

Units they obtained when purchasing their property."

The offer of judgment made no mention of attorney fees or costs. The Loyds accepted the offer of judgment in May 2020. The Loyds also moved to dismiss their claim seeking inspection of the books, records, and documents.

In mid-May 2020, the Loyds moved for attorney fees and costs under K.S.A. 2020 Supp. 60-2002(b) and K.S.A. 60-802(c). The total costs amounted to $241 for the docketing fee and service of process fees. At a hearing on the motion, counsel for the Loyds explained that the Loyds were seeking a little more than $50,000 in attorney fees after working 219 hours on the case and billing at a rate of $250 per hour.

After hearing arguments from the parties, the trial court issued a memorandum decision on the Loyds' motion for attorney fees and costs. The trial court denied the motion, determining that *Richardson v. Murray*, 54 Kan. App. 2d 571, 402 P.3d 588 (2017), which the Loyds relied on, was not on point and did not control the current case. Beyond that, the trial court determined that RWD's offer made no mention of attorney fees and that the Loyds had failed to show that RWD acted unreasonably in exercising caution for the transfer of the water benefit unit which sparked the filing of this case. The trial court incorporated the memorandum decision in its journal entry filed in October 2020.

The Loyds timely appeal.

## ANALYSIS

On appeal, the Loyds argue that the trial court erred by denying their request for costs and attorney fees.

6

*Did the trial court err by denying the motion for costs and attorney fees?*

*Standard of Review*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

The issue of the trial court's authority to award attorney fees is a question of law over which appellate review is unlimited. *In re Estate of Oroke*, 310 Kan. 305, 317, 445 P.3d 742 (2019). When the trial court has authority to grant attorney fees, its decision whether to award fees is reviewed under the abuse of discretion standard. *Consolver v. Hotze*, 306 Kan. 561, 568, 395 P.3d 405 (2017).

When the language of an attorney fees statute makes an award mandatory, the question of whether to award fees is not within the trial court's discretion. The amount of fees awarded, however, remains within the sound discretion of the trial court and is reviewed under the abuse of discretion standard. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013).

Before addressing the Loyds' arguments, we note that K.S.A. 2020 Supp. 60-2002(b) allows a party defending against a claim to serve "an offer to allow judgment to be taken against such party for the money or property or to the effect specified in such party's offer, with costs then accrued." If the offer is accepted, judgment is entered by the clerk. But if the offer is rejected and the case proceeds to some other judgment in favor of the offeree, if that judgment is less favorable than the offer, the offeree must pay the costs incurred after the making of the offer. K.S.A. 2020 Supp. 60-2002(b).

This case centers on the offer made by RWD under K.S.A. 2020 Supp. 60-2002(b) and the Loyds' acceptance of that offer.

*Attorney Fees*

The Loyds first argue that by accepting RWD's offer, they became the prevailing party and, as a result, they are entitled to any costs and attorney fees that are authorized by statute. In support of their argument, the Loyds rely on *Richardson*, 54 Kan. App. 2d 571, Syl. ¶ 8.

In *Richardson*, the Richardsons purchased a home which later experienced water intrusion in the basement. The Richardsons sued the seller based on numerous inaccuracies in the disclosure statement of the real estate contract between them and the seller. The suit included several causes of action, including claims that the seller violated the Kansas Consumer Protection Act (KCPA). The seller submitted an offer of judgment under K.S.A. 2016 Supp. 60-2002(b) which would allow judgment to be taken against them "in the amount of $30,000 with court costs accrued." 54 Kan. App. 2d at 573-74. The Richardsons moved for attorney fees and costs, arguing that the "'court costs accrued'" language included attorney fees under the provisions of their real estate contract or, alternatively, that as prevailing parties they were entitled to attorney fees under K.S.A. 50-634(e), a provision of the KCPA. 54 Kan. App. 2d at 574. The trial court denied the request for attorney fees, and the Richardsons later appealed.

On appeal, the Richardsons argued that the trial court erred when it denied their request for attorney fees. This court addressed both of Richardsons' attorney fees theories. First, this court noted that costs typically mean fees and charges of the court and that attorney fees are generally not included in the costs of an action. 54 Kan. App. 2d at 576. Nevertheless, under K.S.A. 2016 Supp. 60-2003(9) attorney fees may be considered "'[s]uch other charges as are by statute authorized to be taxed as costs.'" 54 Kan. App. 2d

8

at 576. Thus, "[a] party who accepts an offer of judgment may recover attorney fees as costs if the relevant statute or other authority defines costs to include attorney fees." 54 Kan. App. 2d at 576-77.

This court, however, held that the KCPA does not define attorney fees as costs nor did the plain language of the real estate contract between the seller and the Richardsons define attorney fees as court costs. Thus, this court affirmed the trial court's ruling that attorney fees and related expenses were not costs in this specific case. 54 Kan. App. 2d at 578.

This court also considered whether the Richardsons were entitled to attorney fees because the KCPA and the underlying real estate contract provide for an award of attorney fees to the prevailing party. 54 Kan. App. 2d at 579-85. To begin that analysis, this court considered federal opinions dealing with offers under Federal Rule of Civil Procedure 68, which is substantially the same as K.S.A. 60-2002(b). Federal courts have determined that the offeror bears the responsibility for clarity and precision when making an offer under Rule 68, including whether attorney fees are included or excluded from the offer. 54 Kan. App. 2d at 580-81 (citing *Webb v. James*, 147 F.3d 617, 621, 623 [7th Cir. 1998]). After considering the reasoning of the federal courts, this court agreed with their conclusion and held that "any waiver or limitation of attorney fees in an offer of judgment must be clearly and unambiguously stated by the offeror to have effect." *Richardson*, 54 Kan. App. 2d at 581. And because the seller did not clearly and unambiguously waive or limit the Richardsons' right to seek attorney fees outside of costs, this court held that the offer of judgment permitted the Richardsons to pursue attorney fees under a separate theory of recovery. 54 Kan. App. 2d at 581.

Then this court addressed whether the trial court had the authority to award the Richardsons' attorney fees based on an applicable statute or by agreement between the parties. 54 Kan. App. 2d at 581. In doing so, this court began by noting that by submitting

9

an offer of judgment, the seller "allowed judgment to be taken against them based on the pleadings and the evidence in the record." 54 Kan. App. 2d at 582. And the seller was on notice from the pleadings and evidence that the Richardsons brought two counts for which attorney fees were available if they were able to prove their case. 54 Kan. App. 2d at 582. Finally, this court held that the trial court was authorized to award reasonable attorney fees related to the claim under the KCPA, because K.S.A. 50-634(e) authorized attorney fees, and for reasonable attorney fees related to the breach of contract claim because of language contained in the contract between the seller and the Richardsons. 54 Kan. App. 2d at 583-85.

The Loyds maintain that the holding in *Richardson* applies here, and that they are entitled to attorney fees. Specifically, the Loyds argue that because they "became prevailing parties on their mandamus claim . . . the law of Kansas required the district court to determine and award them both their reasonable costs and attorney fees." But the Loyds read the *Richardson* holding too broadly.

This court's opinion in *Richardson* does not say that any party who accepts an offer of judgment, which does not specifically exclude attorney fees, is automatically entitled to attorney fees because of their acceptance of the offer. Instead, *Richardson* merely states that if an offer does not exclude attorney fees and the acceptance of the offer results in one party prevailing on a claim which allows attorney fees, either as incorporated as costs or through some separate recovery mechanism, then the trial court is authorized to order attorney fees. *Richardson*, 54 Kan. App. 2d 571, Syl. ¶ 6. In *Richardson*, that meant that recovery of attorney fees could occur under the KCPA or through the provisions of the real estate contract.

Those mechanisms, however, are not available here. Instead, the Loyds brought their motion for attorney fees under K.S.A. 2020 Supp. 60-2002(b) and K.S.A. 60-802(c), neither of which authorizes the trial court to award attorney fees in this case. See K.S.A.

10

60-802(c) (allowing damages and costs in situations where mandamus is awarded and the plaintiff has suffered damages by the failure of the defendant to perform the specified duty); K.S.A. 2020 Supp. 60-2002(b) (listing procedure for offer of judgment). As mentioned earlier, attorney fees are generally not considered costs. *Richardson*, 54 Kan. App. 2d at 576. But, as the Loyds argue, attorney fees are sometimes allowed in mandamus actions.

In subsection C.1. of their brief, the Loyds argue that Kansas courts have generally included attorney fees within the definition of costs in K.S.A. 60-802(c). In *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 510, 438 P.2d 732 (1968), our Supreme Court held that in an action for mandamus, a successful plaintiff is allowed to "recover such damages as he has actually sustained through the wrongdoing of the defendant," and that the "damages recoverable are the injuries sustained as the natural and probable consequences of the wrongful refusal to comply, and the expense reasonably and necessarily incurred in compelling compliance, including reasonable attorneys' fees."

More recent cases have reaffirmed that attorney fees are recoverable in mandamus actions in certain circumstances. See *Link, Inc. v. City of Hays*, 268 Kan. 372, 381-82, 997 P.2d 697 (2000) (noting that attorney fees are recoverable when the defendant acted unreasonably in failing to perform a duty). But there are limits on the recovery of attorney fees in mandamus actions against public officials. For example, in *Larkin v. Board of Nemaha County Comm'rs*, 170 Kan. 164, 171, 223 P.2d 987 (1950), our Supreme Court held that "in order for a plaintiff in a mandamus action against a public official to be entitled to an attorney's fee to be taxed as costs it must appear that the official acted arbitrarily, unfairly or oppressively and where he acted in good faith he was relieved from such personal liability." The same concept applies when it is a public body, as opposed to a public official. See *Link, Inc.*, 268 Kan. at 381-82 (affirming trial court's

11

decision that the City of Hays had no reasonable basis for failing to enforce the law in question and affirming the award of attorney fees in a mandamus action).

A rural water district would qualify as a public body. For example, rural water districts are organized by county commissioners, directors are elected, and if a position on the rural water district's board becomes vacant before a regular election, the current directors appoint someone to fill the vacancy. K.S.A. 82a-613; K.S.A. 82a-615; K.S.A. 82a-617; 82a-618. Additionally, the rural water district is authorized to exercise eminent domain—the power "to take private property for public use"—which is exclusive to government or a lawfully designated authority. K.S.A. 82a-619(a); *Nat'l Compressed Steel Corp. v. Unified Gov't of Wyandotte County/Kansas City*, 272 Kan. 1239, 1244, 38 P.3d 723 (2002).

Then the question is whether RWD here acted arbitrarily, unfairly, or oppressively when it considered moving one of the water benefit units to the Moores' property, froze the account after the Loyds raised their claim, and accepted the Seetins' letter stating that the water benefit unit should have gone to the Moores. The Loyds argue that RWD acted arbitrarily, unreasonably, and in bad faith when it refused to transfer the water benefit units and issue certificates. Nevertheless, the trial court held that the Loyds had failed to "establish[] with substantial competent evidence by a preponderance of [the] evidence, that RWD [] acted unreasonably in exercising caution and diligence regarding the matter of transfer of the benefit unit," given that the original dispute was between the Loyds and the Seetins in a real estate transaction.

Appellate courts do not reweigh the evidence. If the evidence, when considered in a light most favorable to the prevailing party, supports the decision, the decision will not be disturbed on appeal. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

12

We conclude that RWD did not act arbitrarily, unfairly, or oppressively in initially trying to transfer one of the water benefit units to the Moores. Instead, RWD acted reasonably and prudently. RWD was faced with a situation where the ownership of a water benefit unit was in question. And instead of doing something without having more information, it froze the account. When it received more information from the Seetins, who were the sellers, RWD attempted to act on that information. While RWD was mistaken in its attempt to transfer one of the water benefit units to the Moores, we cannot say that, based on the facts before us, its action in trying to resolve the dispute over one of the water benefit units was anything more than its attempt to see that the proper party received the disputed water benefit unit. Because nothing about RWD's actions were arbitrary, unfair, or oppressive, we conclude that the Loyds cannot recover their attorney fees as costs in their mandamus action.

RWD argues, however, that *Barten* does not stand for the proposition that attorney fees are costs and instead treats them as damages. Nevertheless, RWD's argument on this point ignores that when the Loyds accepted the offer of judgment, the Loyds became the prevailing party on their mandamus claim, which under *Richardson*, entitles them to possible separate avenues of recovery. See *Richardson*, 54 Kan. App. 2d at 581. And as the prevailing party on a mandamus claim, K.S.A. 60-802(c) allows recovery of damages, which could, but does not here, include attorney fees as previously decided in this opinion. See *Link, Inc.*, 268 Kan. at 381-82.

*Costs*

In Section B. of their brief, the Loyds also argue that the trial court erred by failing to award them their costs. This argument is persuasive. The Loyds accepted RWD's offer of judgment. Under the offer of judgment statute, judgment may be taken "to the effect specified in such party's offer, with costs then accrued." K.S.A. 2020 Supp. 60-2002(b). Similarly, K.S.A. 60-802(c) allows a prevailing plaintiff to recover costs in a mandamus

13

action. The Loyds accepted an offer from RWD which did not exclude costs as part of the judgment and, thus, they were entitled to an award of costs—which does not include attorney fees in this case. We remand with directions to award the accrued costs to the Loyds as the prevailing party.

Affirmed in part, reversed in part, and remanded with directions.